**In re The FROG AND PEACH, LTD., Debtor.**

**Bankruptcy No. 83–04435A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

April 10, 1984.

Robert S. Wayne, Schwall & Heuett, Atlanta, Ga., for Penrod's of Lenox, Inc.

Richard B. Herzog, Jr., Bisbee, Parker & Rickertsen, Atlanta, Ga., for The Frog and Peach, Ltd.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

On February 8, 1984, Penrod's of Lenox, Inc. ("Penrod's"), filed an "Application for Allowance of Claim for Fees and Expenses" in the above-referenced Chapter 11 proceeding. Penrod's requests that $1,200.00 attorney's fees and $74.00 expenses be paid as a first priority expense under §§ 507(a)(1) and 503 of the Bankruptcy Code. Penrod's' claim arises in connection with its preparation and submission of a contract for the purchase of certain real property owned by the debtor, The Frog and Peach, Ltd. ("the Frog and Peach").

## FACTS

1. The Frog and Peach, formerly a restaurant, ceased business operations after filing its petition for relief under Chapter 11 of the Bankruptcy Code. On or about October 21, 1983, following negotiations with Jim Jarbo of the Frog and Peach, Penrod's presented a "Contract for Sale of Realty" which stated an offer to purchase the subject property for $325,000.00 cash at closing.

2. The Frog and Peach did not accept Penrod's' initial offer, and thereafter the first lienholder of the subject property, Ray K. Elam ("Elam"), filed a motion for relief from the automatic stay so as to conduct a sale under power. At or about the same time, a contract proposed by Mr. James Arogeti ("Arogeti") for the purchase of the subject property for $350,000.00 was before the Court on the debtor's application to sell real property. The initial offer by Arogeti provided for payment of $150,-000.00 cash at closing and assumption of the $200,000.00 wrap-around note owing to Elam.

3. Penrod's investigated the property further and increased its offer to $360,-000.00 cash at closing. Accordingly, Penrod's submitted this second offer to the Frog and Peach, drew a check in the amount of $25,000.00 payable to the Frog and Peach as earnest money, and filed an objection to the application by the Frog and Peach to sell the subject property pursuant to the Arogeti contract.

4. A third party, Selig Enterprises, Inc. ("Selig"), subsequently entered a bid in the amount of $365,000.00 cash at closing. On January 10, 1984, following notice to all creditors, the Court held a hearing on the application by the Frog and Peach to sell the subject property to Arogeti. This hearing developed into an auction between Arogeti, Penrod's and Selig, and Selig won the Court's approval to purchase the subject property on the basis of its high bid of $425,000.00 cash at closing.

## CONCLUSIONS OF LAW

Penrod's contends that it satisfies the requirements under § 503(b) for allowance and payment of its out-of-pocket costs as a first priority administrative expense under § 507(a)(1). In support of this contention, Penrod's shows the Court that it was the first to offer to purchase the subject property; that its second bid exceeded the amount offered in the Arogeti contract; and that Penrod's landlord, Selig, ultimately purchased the subject property for $75,-000.00 above the amount offered by Arogeti. Penrod's' argument is that its $360,-000.00 cash offer attracted the interest of Selig which, in turn, led to the competitive bidding in the Bankruptcy Court.

The statutory framework under which Penrod's has filed its application for allowance and payment of an administrative expense is as follows: Section 507(a)(1) of the Bankruptcy Code accords first priority to administrative expenses allowed under § 503(b) of Title 11. Section 503(a) states that: "An *entity* may file a request for payment of an administrative expense." [Emphasis added.] Finally § 503(b) sets forth the categories under which a claimant may file for an administrative expense. Although Penrod's application does not fall within one of the defined categories, Penrod's takes the position that its claim is

analogous to the types of administrative claims expressly authorized by §§ 503(b)(3) and (4).

The Court must, for emphasis, restate the fact that Penrod's is not a creditor of the Frog and Peach. Rather, the only connection that Penrod's has had with the debtor and/or the bankruptcy estate is its post-petition effort to purchase the subject real property of the bankruptcy estate. In support of its position, Penrod's cites two cases: *In re George*, 23 B.R. 686, 7 C.B. C.2d 846 (Bkrtcy.S.D.Fla.1982) and *In re Richton International Corp.*, 15 B.R. 854, 5 C.B.C.2d 1019 (Bkrtcy.S.D.N.Y.1981). However, the Court finds that both of these cases are distinguishable from the case *sub judice.*

In *In re George, supra*, Judge Britton allowed a creditor to recover as an administrative expense attorney's fees and expenses incurred to successfully block a Chapter 7 debtor's discharge. Furthermore, Judge Britton read § 503(b) as merely illustrative and not exclusive as to the types of allowable administrative claims. Judge Britton stated:

> I conclude that a creditor's reasonable expense incident to opposing a discharge or revoking a discharge, opposing claimed exemptions, resisting claims or performing other similar services benefiting the estate, *may* be allowed as an administrative expense. § 102(3); 3 *Collier on Bankruptcy* (15th ed.) ¶ 503.03. The omission of these items from the § 503(b)(3) following the term "including" merely deprives these related expenses of mandatory reimbursement. [Emphasis original.]

*In re George*, 23 B.R. at 687, 7 C.B.C.2d at 848.

*George* is inapposite to the instant case on two points. First, the administrative claimant in *George* was a creditor and, as a creditor, the administrative claimant had standing to, *inter alia*, oppose the debtor's discharge. As stated above, Penrod's does not have a similar relationship to the Frog and Peach. Secondly, and more importantly, close examination of the excerpt from *George* reproduced above indicates that the so-called "permissive" categories of administrative expense claims all involve activities which are endemic to a bankruptcy proceeding. Yet, Penrod's merely undertook to execute an arm's length transaction with the bankruptcy estate.

Because the parties in nonbankruptcy transactions bear their own costs, or allocate the same according to the terms of the contract, the instinctive response of this Court would be to summarily dismiss Penrod's application. However, this Court agrees with Judge Britton's expansive interpretation of §§ 503(b)(3) and (4) and concludes that Penrod's claim is not expressly expressly by the terms of § 503(b). Therefore, a more detailed analysis is required.

The second case cited by Penrod's, *In re Richton International Corp., supra*, is similarly inapposite. In *Richton*, Judge Galgay allowed a law firm which represented creditors other than those on the Official Creditors' Committee to receive compensation and reimbursement of expenses as an administrative claim in the Chapter 11 bankruptcy proceeding. Judge Galgay stated that:

> Section 503(b)(3) and (4) authorizes compensation for legal services rendered in making a substantial contribution to a Chapter 11 case. 11 U.S.C. § 503(b)(3), (4). This is so even if the services rendered by counsel are for its client. The correspondence of [the law firm's] self interest in serving its client, the Banks, and the interests of the Debtors in a successful reorganization, does not bar compensation to [the law firm] from the Debtors. Otherwise, creditor participation in reorganization might be discouraged. The appropriate test of compensable services is whether they substantially contribute to the successful result. [Citations omitted.]

*In re Richton International Corp.*, 5 C.B. C.2d at 1022.

Judge Galgay also reads §§ 503(b)(3) and (4) expansively. The test laid down by Judge Galgay under §§ 503(b)(3) and (4) is whether the professional services "substan-

tially contributed to the successful result". However, before applying this test, the Court must consider the policy Congress sought to advance by allowing compensation of professionals as in *George* and *Richton.*

Judge Galgay determined that:

The policy aim of authorization of such compensation is to promote meaningful creditor participation in the reorganization process.

*Id.* at 1021. Yet, Penrod's has no stake in the Frog and Peach bankruptcy proceeding per se. Clearly, the fact that Penrod's was acting in its own self interest is not preclusive, because, as Judge Galgay pointed out, a creditor/applicant normally has a concurrent interest along with the debtor in promoting a successful reorganization. However, the policy of inducing creditor involvement in a bankruptcy proceeding would not be furthered by allowing Penrod's administrative claim.

The Court is extremely reluctant to open a potential floodgate of claims by outsiders which transact with a debtor in bankruptcy, but whose claims are not specifically authorized under § 503(b). As in the instant case, such claims would typically present a difficult question of causation, i.e., whether Selig's involvement in the bidding process was a result of Penrod's' interest in the subject property. A more fundamental problem with Penrod's application is that, had the Frog and Peach not been involved in a bankruptcy proceeding, Penrod's would certainly have absorbed the costs of attorney's fees and expenses which they presently seek from the bankruptcy estate. Of course, it is not the Frog and Peach that would bear the expense of Penrod's claim should it be allowed. Instead, the claim would be paid by the unsecured creditors of the Frog and Peach which, in all likelihood, will receive but a fraction of their allowed claims.

In the circumstances of a third party dealing with the debtor in the ordinary course of the debtor's business, § 503(b)(1)(A) guarantees that such a creditor will be compensated on a priority basis.

Penrod's' claim does not fit within this category, and the Court can find no justification for reading between the lines of the statute to permit Penrod's' claim.

While the negative tone of this Order is intended to discourage others from filing what the Court determines herein to be a frivolous application for administrative expenses, this Order should not be construed as an outright bar against an administrative claim by a meritorious, non-creditor claimant which has directly conferred a benefit upon the debtor and whose claim is outside the literal categories defined by Congress in § 503(b).

In accordance with the foregoing, the application by Penrod's for allowance of an administrative expense claim is hereby DENIED.

IT IS SO ORDERED.