**In re Robert DIBERTO, Debtor.**

**Bankruptcy No. 90–2331.**

United States Bankruptcy Court,
D. New Hampshire.

Oct. 15, 1993.

Franklin Jones, Michael, Hones & Wensley, Rochester, NH, for debtor.

Mark H. Gardner, Engel, Gearreald & Gardner, Exeter, NH, for Bluebird Trust, Argus Trust and Sable Trust.

Geraldine B. Karonis, Manchester, NH, for U.S. Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case was heard on a Motion for Allowance of Administrative Expenses (Court Doc. 160) filed by Bluebird Trust, Argus Trust and Sable Trust, seeking an allowance as an administrative claim of the sum of $29,987.34 covering fees and expenses incurred by their attorneys in conjunction with their objections to various provisions of an earlier plan of reorganization which they contend resulted in a substantially improved plan of reorganization which was ultimately confirmed by this Court. They contend that they are entitled to their attorney's fees and expenses as having made a "substantial contribution" to this estate pursuant to § 503(b)(3)(D) of the Bankruptcy Code.

At the hearing on this Motion on October 1, 1992 the movants did not introduce any evidence to establish the factual question of substantial benefit to the estate but stated that the Court could take judicial notice of the case record and that the case record itself would establish their having created that substantial benefit to the estate. The Court has now completed its review of that record and rules accordingly based on the record.[1]

■ The record establishes that the debtor's original plan promised a 100 percent distribution to general unsecured creditors over time but provided limited security in existing real property assets to protect that distribution. The movants here did object to that feature of the plan, among many other objections relating to their particular secured claims, but so did the Town of Nottingham in its objection (Court Doc. Nos. 98 and 119) and Ralph and Doris Granger, unsecured creditors (Court Doc. No. 113). Moreover, since the issue thus raised went to the § 1129(a)(7) statutory requirement that the Court find that the Plan of Reorganization be in the "best interest" of the creditors, a finding that the reorganization must make regardless of any objection, it is quite apparent from this record that the question of leaving the debtor with unencumbered real estate and the general creditors with a promise to pay inadequately secured by only a portion of their real estate, would have necessarily required a determination by the Court as to whether such a plan could be confirmed even in the absence of any objection by a creditor.[2]

1. Ironically, while the movants at the time this motion was filed and heard spoke in terms of the "consensual" plan of reorganization that had been achieved, after their objections were met with certain modifications of the plan by the debtor that satisfied their objections, which gave additional value and security to the distribution promise to unsecured creditors in this estate, subsequent actions by these movants seeking to "clarify" the confirmation order would have the effect of denying the full benefit to the unsecured creditors require a vacating and undoing of the confirmed plan. See "Motion for Interpretation and Enforcement of Plan" dated October 22, 1993 (Court Doc. No. 179); "Memorandum Opinion and Order On Motion For Interpretation and Enforcement of Plan", entered December 14, 1992 (Court Doc. No. 190); and "Motion for Interpretation and Clarification of Debtor's Plan of Reorganization", dated April 5, 1993 (Court Doc. 195); and the "Protective Order Limiting Further State Court Action" (Court Doc. No. 203) dated June 15, 1993. Said Order of June 15, 1993 has been appealed by the present movants and the appeal is presently pending in the U.S. District Court.

2. This Court routinely requires debtors to affirmatively show "best interests" at confirmation, i.e., the plan provides more than creditors would get in chapter 7 liquidation notwithstanding the absence of any objection to confirmation.

It is also apparent from this record that while the movants' activities may have had the incidental benefit of prompting the debtor to increase the security coverage for its unsecured creditor distributions, the primary motivations of these movants was to protect their own interests and indeed most of the litigation expense involved in this application covered attempts to defeat the reorganization entirely and permit them to continue with pending state court litigation against the debtor. Indeed, they are still litigating with this debtor regarding its reorganization.[3]

Bankruptcy Courts are leery of allowing too easy a resort to "substantial contribution" claims under the statute since practically all of the expectable negotiating activity during the course of a reorganization case aimed at improving a plan could be deemed to be a "contribution" by all parties involved in negotiating a plan that may be confirmed on a consensual basis. If allowable as administrative expense such compensation could increase total expenses exponentially.

█ The courts therefore have developed the general doctrine that creditors normally act in their own economic self-interest and that any incidental benefit to the estate they may create is an indirect by-product of the pursuit of their own self-interest. It is "direct benefit" for all creditors as a primary motivation that may justify § 503(b)(3)(D) compensation, and not simply incidental benefits from the creditor's normal basic desire to protect its own interests. This Court has discussed the law in this regard under the heading "The Law of Economic Self–Interest" in its recent memorandum opinion in *In re PSNH*, 160 B.R. 404, 451–53 (Bankr. D.N.H.1993), and will not repeat that discussion here. See, e.g. *In re FRG*, 124 B.R. 653, 659 (Bankr.E.D.Pa.1991); *Matter of Cuisinarts*, 115 B.R. 744, 750 (Bankr.D.Conn. 1990); *In re U.S. Lines, Inc.*, 103 B.R. 427, 430 (Bankr.S.D.N.Y.1989); *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 571 (Bankr.D.Utah 1985); *In re Lister*, 846 F.2d 55, 57 (10th Cir.1988); *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 689 (Bankr. S.D.Cal.1988); *In re American 3001 Telecommunications, Inc.*, 79 B.R. 271 (Bankr.

N.D.Tex.1987); *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986), *quoting In re General Oil Distributors*, 51 B.R. 794, 806 (Bankr.E.D.N.Y.1985); *In re Frog and Peach, LTD.*, 38 B.R. 307 (Bankr.N.D.Ga.1984); *In re 9085 East Mineral Office Bldg., Ltd.*, 119 B.R. 246, 254 (Bankr.D.Colo.1990).

The case cited to the contrary by the movants, *Ex parte Roberts*, 93 B.R. 442 (D.S.C.1988), actually reaffirms the general principles set forth above. Its result is distinguishable in that the appellate court deferred to specific fact findings by the bankruptcy judge, as to the primary motivation of the creditor seeking compensation, and also noted that the record did not indicate that any other creditors were active in pressing the issue involved. 93 B.R. at 445. To the extent that the decision is otherwise contrary I do not find it persuasive since it omits any extended discussion of the applicable case law and underlying statutory policies involved.

In the present case, based upon my review of the entire record, I can and do find that the primary motivation of the movants with regard to the pending reorganization plan was to force its modification in a way that would permit them to continue their state court litigation against the debtor, based upon their special interest in claims to certain properties, and that any improvement with regard to the dividend to general unsecured creditors in the plan was an incidental matter. That being so the request for administrative compensation must be denied.

█ Alternatively, even if the movant believed they had an appropriate basis for such a claim as a direct benefit to the estate, it was incumbent upon them to see that the disclosure statement concerning administrative claims that would be covered by the reorganization was amended to indicate that following confirmation they would in fact seek substantial compensation in that regard. There is no such mention in the disclosure statement that went out to creditors before they voted on the plan, and there is no

---

**3.** See Footnote 1, above.

indication in this record that the movants ever raised that contention to the debtor and to this Court prior to the entry of the confirming order. Had they done so, the Court and the creditors would have known that the plan being confirmed not only covered the liabilities disclosed by the debtor in its disclosure statement but the possible allowance of a substantial additional administrative claim that was undisclosed. *Cf. In re PSNH, supra,* at 453–56. The movants having failed to require that such disclosure be made, I believe they have waived any right to make such a claim in this estate.[4]

A separate order denying the motion in question will be entered in accordance with this opinion.

---

**4.** Since as indicated above it is possible for any active creditor in the various hearings leading to a reorganization confirmation to contend that its involvement helped improve the plan of reorganization, and thus the creditor conferred the benefit upon the estate, it is particularly important that any such contentions be "put on the table" prior to confirmation so that the creditors and the Court can react to that possible liability to be covered by the reorganized debtor. The genius of chapter 11 of the Bankruptcy is to force a complete disclosure and quantification of all liabilities against the estate so that a meaningful reorganization plan can be negotiated and confirmed. Since allowance of § 503(b)(3)(D) claims are relatively rare it is incumbent upon creditors seeking such allowance in any reorganization to make known their intentions (and hourly rates) as early as possible in the process so that all parties in interest may be advised and may react appropriately.