**In re James W. BARRETT, Debtor.**

**Bankruptcy Case No. 88–04214.**

United States Bankruptcy Court,
N.D. Ohio.

Jan. 20, 1993.

Elliott Ray Kelley, Cleveland, OH, for debtor.

Richard C. Kenney, Weltman, Weinberg & Associates Co., L.P.A., Cleveland, OH, for Soc. Nat. Bank.

Myron E. Wasserman, Cleveland, OH, Chapter 13 Trustee.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

This opinion deals with the Debtor's attempt to confirm a plan in this 1988 case. The Debtor's original plan was modified February 14, 1989. At the confirmation hearing on September 15, 1992, the Debtor proposed further modifications to his plan in an effort to achieve confirmation. Both the standing chapter 13 trustee (the "Trustee") and Society National Bank (the "Bank"), the first mortgagee on the Debtor's home, have, for various reasons, urged that the plan is not confirmable and that the case should be dismissed.

This case was filed over four years ago on November 7, 1988. The confirmation process was sidetracked when the Bank filed an adversary proceeding against the Debtor seeking dismissal of the case and a variety of sanctions against the Debtor and his wife. The complaint in that adversary proceeding was premised on the Bank's contention that this case had been filed in bad faith and, in any event, that the Debtor could not revive his mortgage debt since his personal obligation had been discharged in his prior chapter 7 case. The grounds for the Bank's assertion of bad faith arose out of the circumstances surrounding the Debtor's two prior chapter 13 cases.

Debtor's first case was filed January 5, 1987, prior to a scheduled foreclosure sale of his home. He converted the case to chapter 7 on May 8, 1987. The Debtor received his chapter 7 discharge on August 14, 1987. The Debtor filed another chapter 13 case September 22, 1987, to again block the Bank's foreclosure sale of his home. That case was dismissed by the Court with a 180–day bar against future bankruptcy filings under section 109(g) of the Bankruptcy Code. Although the Debtor's home was then sold at a foreclosure sale, the Debtor was able to delay confirmation of the sale in state court. The buyer reneged and the Debtor filed this case before another foreclosure sale was held. This case was filed some six months after the 180–day bar period had expired.

This Court ruled against the Bank in its adversary proceeding on the ground that the Bankruptcy Code did not preclude a debtor from assuming mortgage indebtedness in a chapter 13 case where the debtor had been discharged from personal liability on the mortgage in a prior chapter 7 case. The Court also ruled that the Debtor's behavior in connection with his prior case was improper and awarded sanctions against him, but found that this case and the Debtor's proposed plan were presented in good faith and appeared feasible. These findings were based on the fact that prior to filing this case the Debtor had been appointed a deputy clerk of the Cleveland Municipal Court at a substantially increased income which, so far as then appeared, would enable him to fund his plan. *See Society National Bank v. Barrett (In re Barrett)*, 105 B.R. 385 (Bankr.N.D.Ohio 1989). The Bank appealed this Court's decision against it in the adversary proceeding.

During the pendency of the appeal the Debtor continued to make monthly payments to the Trustee of $565 pursuant to a wage order on his employer. At the time of the September 15 hearing the Trustee held more than $25,000 representing the sum of these payments. The Debtor's present problems arise primarily from the fact that he failed during the pendency of the appeal to pay or save the regular monthly mortgage payments that he was to pay directly to the Bank under his proposed plan. These payments were $382 at the inception of the case and increased to about $468 by the time of the September 15 hearing, at which point these defaulted payments totaled more than $20,000.

Prior to the 1989 trial in the adversary proceeding the Debtor delivered to the Bank a certified check for $1,910 to be applied to the postpetition accrued mortgage payments. This was the only payment the Debtor made on the mortgage

during the pendency of this case. The Bank refused to accept further mortgage payments from the Debtor after the appeal was filed. It did attempt to work out arrangements with the Debtor pursuant to which the Debtor's monthly payments on the mortgage would be paid without prejudice to the Bank's appeal. These arrangements took various forms including proposals that the payments be held by the Trustee or be escrowed by Debtor's attorney pending the outcome of the appeal. The Bank did not, however, seek an order relating to these mortgage payments even though no payments were made. The fact that no current mortgage payments were being made or escrowed was adverted to in several status conferences. However, the Bank took the position that the appeal of the adversary proceeding had deprived this Court of jurisdiction to deal with the matter.

On June 10, 1991, the Supreme Court held that "chapter 20" filings, i.e. the filing of a chapter 13 case to deal with mortgage indebtedness after a chapter 7 filing, were not *per se* prohibited under the Bankruptcy Code. *Johnson v. Home State Bank*, 501 U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Based on this decision, the Bank cashed the Debtor's certified check for $1,910 and applied the proceeds against the mortgage and by letter of July 29, 1991, demanded that the Debtor catch up the postpetition mortgage payments; no payments were made.

According to the Debtor's testimony at the September 15 hearing, the Debtor did set aside money for these monthly mortgage payments at the beginning of the case, amounting to $2,500 in all. The Debtor attributed his failure to continue this set aside, and his use of the $2,500 for other purposes, to the need to pay "basic living expenses." Under questioning from the Bank's attorney he identified a sewer repair of $8,000 to his house in 1989, a $4,000 repair to his uninsured automobile in 1991, and amounts paid to assist an adult daughter, as requiring funds he might have used for his mortgage payments.

On May 21, 1992, the Sixth Circuit affirmed the district court which had in turn affirmed this Court's decision in the adversary proceeding. 964 F.2d 588 (6th Cir. 1992). On May 15, 1992, the Trustee filed a motion to set a date for confirmation of the Debtor's plan and to require the Debtor to propose a confirmable plan. At a hearing on June 16 the Court granted the Trustee's motion and set confirmation for August 18, 1992. The Bank advised at that hearing that it would file an expedited motion for relief from stay and turnover of funds by the Trustee. On July 1, 1992, the Bank filed a motion for allowance of an administrative claim, for dismissal of the Debtor's case, and for distribution to the Bank of funds held by the Trustee. At the August 18 confirmation hearing it was reported that the Debtor had not notified creditors of the confirmation hearing or filed an amended budget, plan or motion to value the home. The Court set September 15 as the hearing date for the Bank's motion and for confirmation. The Court also admonished Debtor's counsel that the Debtor must make the requisite filings to demonstrate that the Debtor could fund a feasible plan.

Notwithstanding this warning the Debtor made no filings within the time required to be considered at the September 15 hearing. However, it appeared from the parties' stipulations and the evidence adduced at that hearing that the Debtor's plan was not feasible. The deputy chapter 13 trustee testified, without contradiction by the Debtor, that based on the assumptions in the Debtor's plan the monthly plan payments would need to be increased by $185 from $565 to $750 a month to pay Debtor's secured and priority debts within 60 months, the maximum time permitted under section 1322 of the Code. It also appeared that the Bank's mortgage indebtedness had increased from about $51,000, when the case was filed, to over $74,000; that the Debtor's home, which was worth about $55,000 when the case was filed, was now worth about $55,000 to $60,000; that total liens on the home exceeded $120,000; and that, in general, the Debtor had not maintained

the house adequately because of financial pressures.

Following the lunch break at the September 15 hearing, Debtor presented a proposed modification of his plan showing payments in the amount of $750, a revised budget which purported to support this increased payment, and a revised motion to value the Debtor's home. None of these had been noticed to other creditors or considered by the Trustee, and none could be dealt with at the September 15 hearing.

Debtor has a history in this case of failing to provide the documents and information required to confirm a plan. The Trustee reported on January 23, 1990, that the Debtor's plan was not confirmable and that the Debtor would need to file modifications of his plan, his budget and the proposed valuation of Debtor's house. These same deficiencies were raised by the Trustee in a motion filed May 15, 1992, to put confirmation of this case back on track after the Sixth Circuit decision. The Debtor's failure to attend to these prerequisites was raised at the hearing on June 16, 1992, and, because of continuing default, was stressed at the August 18, 1992, hearing.

■■■ The Bank's adversarial position on this case may explain Debtor's failure to tend to these matters, but they do not excuse it after the Sixth Circuit ruled in his favor. The Debtor could and should have filed an amended budget and plan long before the September 15 hearing. Despite repeated warnings the Debtor failed to prosecute his case. This failure constitutes cause for dismissal of his case under § 1307 of the Bankruptcy Code. But more seriously the evidence adduced at the September 15 hearing reveals that the Debtor's proposed plan is not feasible and could not be confirmed under section 1325(a)(6).

Funding his proposed plan would require more than double the $565 monthly payments Debtor has been making to the Trustee. According to his proposed amended plan, those payments would be increased by $185 to $750. In addition he would be required finally to pay his regular monthly mortgage payment, which is now $468, directly to the Bank.[1] This means that he would need to come up with an additional $653 each month just to continue his present standard of living. The evidence does not support his ability to do so.

The evidence shows that by not making his monthly mortgage payments through the September 15 hearing the Debtor avoided paying the Bank more than $20,000. But the Debtor has nothing to show for this saving. He testified that he was unable to set aside his monthly mortgage payments because of "basic living expenses." Even if his $8,000 sewer expense, his $4,000 automobile repair expense and amounts he paid to assist his adult daughter are treated as extraordinary nonrecurring items, they would still not total $20,000. Moreover, it appears that some expenses of this sort are inevitable. The Debtor's house is in disrepair and will require repair and maintenance to preserve its value. In view of this history there is simply no basis on which it appears plausible for the Debtor to bear these increased costs while at the same time finding money to maintain his house and meet his other living expenses. Therefore, Debtor's case will be dismissed under section 1307(c)(5) of the Bankruptcy Code as well as under section 1307(c)(1) of the Code.

The Bank had also argued that the Debtor's plan was not feasible because he was limited by section 1322(c) to less than an additional year to fund his proposed plan, not the additional five years the Debtor asserts are available to him under that section. In view of the Court's finding that his plan is not feasible on a five-year basis, the Court does not reach that issue.

This leaves the question of what to do with the money paid by the Debtor to the

---

1. The amount of the Bank's regular monthly payment outside the plan appears to have increased since 1989. The proposed "Joint Stipulated Order" attached as Exhibit D to the Bank's motion for allowance of administrative claim indicates that in 1989 the regular monthly payment was $382. However, the testimony at the September 15 hearing and the budget filed that day suggest that the monthly payment is now $492. The Bank's counsel stated that the current monthly payment under this variable interest loan is $468.77.

Trustee over the last four years, which now amounts to in excess of $25,000. The Bank argues that it is entitled to these funds as an administrative expense claim. The Bank pegs the amount of the claim at the aggregate unpaid balance of unpaid postpetition mortgage payments which exceeded $20,000 at the time of the September 15 hearing. It appears that the amount claimed includes $7,059.68 which the Bank expended for real estate taxes and insurance on the house during the pendency of this case.

This is a matter of first impression in this Court. Insofar as I am aware, no secured creditor has heretofore claimed funds remaining in the Trustee's possession after dismissal of a case prior to confirmation. Section 1326(a) of the Bankruptcy Code provides:

(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

(2) A payment under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If the plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. **If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.**

(emphasis added).

Section 503(b)(1)(A) of the Code provides that "there shall be allowed administrative expenses ... including ... the actual, necessary costs and expenses of preserving the estate." The Bank's argument is twofold. It argues generally that it is entitled to the full amount of the defaulted mortgage payments from funds paid by the Debtor to the Trustee. This contention, which appears premised on an adequate protection theory, is discussed subsequently. It also argues that the expense it incurred in paying insurance and taxes benefited the Debtor and the estate and should be recoverable from payments made to the Trustee. However, the Bank's payments were obviously made by the Bank to pro-

tect its collateral. Any benefit to the Debtor or to the estate was incidental. Moreover, it is difficult to see how such payments could benefit the estate or other creditors. If, as here, the mortgagee is undersecured, such payments will not preserve value in the collateral for anyone other than the mortgagee. If the mortgagee were oversecured it would not need an administrative expense claim but would recover its payment from the collateral under the mortgage.

■ Administrative expenses are normally expenses incurred at the instance of the trustee which are designed to benefit the estate generally, not simply one creditor or the debtor. This perception is reinforced by subsection 503(b)(3) of the Code which addresses recovery by creditors of administrative expenses under certain circumstances. Nothing in this subsection suggests that the draftsmen intended to award a mortgagee administrative expense status for its costs in protecting and preserving its collateral.

The Bank cites only one case to support its position that it is entitled to the full amount of the defaulted monthly payments. *Ford Motor Credit Co. v. Holly (In re Holly)*, 109 B.R. 524 (Bankr.S.D.Ga. 1989). In *Holly* a secured creditor requested the court to approve preconfirmation payments by the chapter 13 trustee directly to the creditor. The court denied the request but held that upon conversion of the case to chapter 7 moneys theretofore paid to the chapter 13 trustee by the debtor would, after expenses, be distributed among secured creditors. *Holly* justified these payments under section 507(b) of the Code. Section 507(b) provides super priority administrative claim status to a secured creditor's claim where the adequate protection provided to the secured creditor proves to be inadequate. This section provides a statutory link between administrative expense claims and adequate protection claims. The *Holly* court found that the preconfirmation payments to the chapter 13 trustee in that case were intended to provide adequate protection to the secured creditors. In this case, however, the funds

held by the Trustee were never intended as adequate protection for the Bank during the preconfirmation period. The Bank did not request adequate protection until it filed this motion.

▮ A request for adequate protection must be made prospectively. *In re Best Products, Inc.,* 138 B.R. 155 (Bankr. S.D.N.Y.1992). The Bank cannot after the fact demand moneys paid to the trustee as adequate protection. The record indicates that the Bank considered relief from stay and adequate protection as far back as 1989. In the adversary proceeding which was the subject of the Sixth Circuit appeal, relief from the automatic stay was one of several requests by the Bank. But by the time of the 1989 trial in that proceeding, the Bank had apparently abandoned that request. The only issues identified by the parties for trial were lack of good faith, "chapter 20" and injunctive relief against the Debtor's wife. (See June 23, 1989, Joint Trial Statement filed in adversary proceeding 88–0531.) It appears from the July 29, 1991, letter from the Bank's counsel to the Debtor's counsel that the Bank considered filing a motion for relief from stay if the Debtor did not make the payments outside the plan. Payments were not made, but the Bank did not seek relief from stay or adequate protection.

The Bank argues that it is unfair for the Debtor to have had the benefit of living in the house for the last four years while the Bank paid insurance and taxes and received almost nothing on its loan. This risk was, however, apparent to the Bank, as well as the Court, from the beginning of the case. The Bank chose not to address it out of the stated concern that its appeal of the adversary proceeding might be jeopardized.

The Bank might well have been justified in demanding that the Debtor escrow the mortgage payments to provide it adequate protection. It elected not to do so. Under these circumstances section 507(b) cannot form the basis for the asserted administrative expense claim.

▮ Insofar as the Bank seeks compensation for delay in realizing on its security, which is represented by the interest compo-nent in the defaulted mortgage payment, the Bank's request conflicts with *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The thrust of *Timbers* is that adequate protection is available only to protect against diminution in collateral value and may not be used to compensate for delay in foreclosure attributable to the automatic stay. The evidence in this case does not indicate that the Bank's collateral has declined in value during the pendency of this case; if anything, it appears to have increased in value.

In summary, there appears under these facts no legal basis to deviate from the clear and explicit command in section 1326 of the Code that upon dismissal prior to confirmation moneys in the hands of the chapter 13 trustee be returned to the debtor.

The remaining issue is whether, as the Bank requests, the case should be dismissed with section 109(g) sanctions. This section provides:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case....

The Bank does not cite any failure by the Debtor to obey orders or to appear before the Court in proper prosecution of the case other than the Debtor's failure to set aside payments during the course of the Bank's appeal.

▮ Under section 1326(a)(1) of the Bankruptcy Code the debtor is obliged to "commence making the payments proposed by a plan within 30 days after the plan is filed." Paragraph 2 of Debtor's modified plan filed on February 14, 1989, committed the Debtor to pay the Bank regular monthly mortgage payments outside the plan. There is no order in this case relating to

these payments. There is nothing to contradict Debtor's testimony that he was ready, willing and able to make these payments at the inception of the case. It is the Bank that refused to accept payments from the Debtor as proposed in his plan. Although the Bank attempted on a number of occasions to work out a mechanism relating to these outside payments, it did not seek a court order concerning them and there is none. Therefore, there is no failure by the Debtor to obey a court order, let alone a willful failure.

 The real brunt of the Bank's argument is that the Debtor has abused the bankruptcy system, has in effect had a free ride at the mortgagee's expense, and should not be permitted to exploit the Bankruptcy Code a fourth time to prevent sale of his home at foreclosure. The Bank suggests that an appropriate order to this effect may be issued under section 105 of the Bankruptcy Code. *But cf. Frieouf v. United States (In re Frieouf),* 938 F.2d 1099 (10th Cir.1991). Although I believe that the Court does have the power and authority to prohibit multiple filings where they appear abusive, this does not appear to be an appropriate case for exercise of that power.

The Debtor's behavior in his two prior cases is only of limited relevance. The Debtor in those cases, or at least the second case, did abuse the bankruptcy system as the Court found and sanctioned him accordingly. Debtor's problem in those cases was obviously caused by too little income to fund a plan that would save his home. That changed with his appointment as deputy clerk in Cleveland Municipal Court in 1988, a job he continues to hold. He has in fact made substantial monthly payments for four years to the Trustee. He did endeavor to make payments at the beginning of the case to the Bank and put moneys aside for a period when they were refused. His failure to continue to put moneys aside appears from the evidence due to strained circumstances not to self-indulgence or waste. There is no evidence that the Debtor lived an extravagant lifestyle or misapplied any moneys.

It appears that this Debtor, like many others, lacked the self-discipline or wherewithal to make voluntary payments over the course of this case. For this reason payments under chapter 13 plans are generally made pursuant to wage orders and not left to the volition of the debtor. The problem was exacerbated in this case by the uncertainties arising from the appeal and whether or not the case could be prosecuted successfully.

Similarly the Court does not view the Debtor's failure to prosecute in this case as justifying use of section 105 of the Code to bar future filings. This case is in my experience unique in remaining pending for four years without confirmation. Debtor's failure to prosecute in light of the complexities, though not excusable, does not appear willful, nor has the Bank asserted that this failure was willful. Moreover, Debtor's counsel has a history in chapter 13 of delays and failures to prosecute cases effectively and has been sanctioned accordingly. In such circumstances extraordinary relief against the Debtor under section 105 does not appear warranted.

This is not, however, to suggest or invite a further chapter 13 filing by this Debtor. For the reasons mentioned, it appears that the Debtor is not able to propose a feasible plan. The Court's order in conformity with this opinion is attached.

## JUDGMENT

A memorandum of opinion having been issued in respect of confirmation of the Debtor's modified plan and Society National Bank's ("Bank") motion for allowance of an administrative claim, for dismissal of this case pursuant to sections 1307 and 109(g) of the Bankruptcy Code, and for distribution of funds, it is

ORDERED, ADJUDGED, AND DECREED that

1. Confirmation of the Debtor's modified plan be, and it hereby is, denied.

2. The Bank's motions for allowance of an administrative claim and distribution of funds be, and they hereby are, denied.

3. The Bank's motion for dismissal of the case pursuant to section 1307 of the Bankruptcy Code be, and it hereby is, granted.

4. The Bank's motion for dismissal pursuant to section 109(g) be, and it hereby is, denied.