In re Carl M. WALTER, II aka Mike Walter dba L & M Woodworks, Lori Ann Walter, Debtors.

Bankruptcy No. 96–70120.

United States Bankruptcy Court, C.D. Illinois.

July 29, 1996.

Edward W. Brankey, Charleston, IL, for Debtors.

Daniel W. Austin, Taylorville, IL, for Creditor Palmer State Bank.

John H. Germeraad, Chapter 13 Trustee, Petersburg, IL.

## OPINION

BASIL H. COUTRAKON, Bankruptcy Judge.

Before the Court are "Trustee's Report to Court on Funds Held and Suggested Distribution of Funds", "Debtors (sic) Response to Trustee's Report on Funds Held and Suggested Distribution of Funds", and Palmer State Bank's "Motion to Authorize and Direct Chapter 13 Trustee to Distribute Pre-Dismissal Payments to Palmer State Bank". At issue is who is entitled to post-petition plan payments made to the Chapter 13 trustee where a case was dismissed before a plan was confirmed.

Debtors filed their Chapter 13 petition on January 18, 1996. Pursuant to a proposed Chapter 13 plan filed February 9, 1996, Debtors made several payments to John H. Germeraad, the Chapter 13 trustee ("Trustee"). As a consequence of said payments and a turnover order entered by the Court on May 8, 1996, Trustee is now holding $2,245.25.

Debtors' plan was never confirmed. On May 13, 1996, Debtors made an oral motion to dismiss their Chapter 13 proceeding, which was granted as a matter of right. See 11 U.S.C. § 1307(b). A written order of dismissal was to be (and will be) entered after it has been determined how the funds being held by the Trustee are to be distributed.

Debtors now seek the return of the $2,245.25 being held by the Trustee. They assert simply that the plan terminated with their motion to dismiss and that 11 U.S.C. § 1326(a)(2) requires that the money be refunded to them.

Trustee argues that a portion of the money he is holding should be paid to Palmer State Bank ("the Bank"), Debtors' largest creditor. Trustee suggests that Debtors' plan payments were probably generated by the sale of inventory or accounts receivable from the woodworking business which Debtors own and from which they derive their income. Because the Bank has a perfected security interest in the inventory and accounts receivable of the business, Trustee argues, the Bank is entitled to at least the regular monthly plan payments which it would have received had the plan been confirmed. As for the remainder of the funds on hand, Trustee would return those to the Debtors after paying court costs.

The Bank echoes Trustee's argument, but seeks to have the entire amount being held by the Trustee turned over to it. The Bank asserts that pre-confirmation payments made to a Chapter 13 trustee are to provide adequate protection to the secured creditors and, as the only secured creditor scheduled, the Bank would be the logical beneficiary of the pre-confirmation payments. In the alternative, the Bank asserts that where adequate protection payments are inadequate, secured creditors are entitled to an administrative expense claim payable out of funds paid to the trustee.

11 U.S.C. § 1326(a)(2) states as follows:

(2) A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. *If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.* (emphasis added).

11 U.S.C. § 503(b) provides for the allowance of administrative expenses, which include "the actual, necessary costs and expenses of preserving the estate".

In all matters involving statutory construction, a court should go beyond the literal language of the statute only if reliance on

that language would defeat the plain purpose of the statute. *Bob Jones University v. U.S.*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025–26, 76 L.Ed.2d 157 (1983). By its clearly expressed terms, § 1326(a)(2) directs the Chapter 13 trustee to return post-petition payments to the debtor if the plan is not confirmed. The statute provides one exception to this general rule, which permits the trustee to deduct and pay any administrative expense claims arising under § 503(b). It does not appear to this Court that a literal application of § 1326(a)(2) defeats the purpose of the Bankruptcy Code generally, or of Chapter 13 specifically. The Bankruptcy Code reflects a congressional intent to make attractive and thus, encourage filing of voluntary Chapter 13 petitions. *Smith v. Strickland,* 178 B.R. 524, 527 (Bankr.M.D.Fla.1995).

A review of the relevant precedent on this issue reveals that there are no reported cases which are factually identical and directly on point. There are, however, numerous opinions which address the effect that a conversion to Chapter 7 has on property in the hands of the Chapter 13 trustee; in fact, the Bank cites several such cases in its Motion. However, this Court shares the view of Judge Robert Ginsburg expressed in *In re Slaughter,* 141 B.R. 661, 662 (Bankr.N.D.Ill. 1992), that "there are . . . significant differences between conversion and dismissal such that cases resolving the respective rights of various parties to funds held by the Chapter 13 trustee at the time of conversion offer little guidance" where a dismissal of a Chapter 13 case is involved. *Accord In re Nash, infra.*

There appears to be only one appellate decision which addresses the specific issue of who is entitled to funds being held by the Chapter 13 trustee when a case is dismissed. *See In re Nash,* 765 F.2d 1410 (9th Cir.1985). In *Nash,* the court held that the debtor owned the undistributed funds held by the trustee because confirmation of the Chapter 13 plan vested ownership of the estate's assets in the debtor. The court also found that § 349(b)(3), which revests estate property in the entity that owned it prior to the bankruptcy filing, further supported the finding

that the debtor owned the funds being held by the trustee. *Id.* at 1414.

Unlike *Nash,* the Chapter 13 plan in this case was never confirmed. Accordingly, the theory which supported the *Nash* holding, that confirmation of the plan vested ownership of the estate's assets in the debtor, is not applicable here. However, the *Nash* court acknowledged that § 349(b)(3), which revests estate property in the entity who owned it prior to the bankruptcy filing, provided an alternative basis for its finding. Section 349(b)(3) is instructional here because it applies irrespective of whether a plan was ever confirmed. Under § 349(b)(3), even if Debtors' plan payments in this case came from pre-petition inventory and/or accounts receivable, the undistributed funds would revest in Debtors upon the dismissal of the case.

In his analysis of § 349, Judge Ginsburg concluded that, while § 349(b)(3) deals only with property that was property of the estate pre-petition, the same logic should apply to post-petition property of the estate, such as a Chapter 13 debtor's wages:

> The result follows because the Bankruptcy Code, in § 349, seeks to undo the bankruptcy upon dismissal and make it seem, insofar as possible, as if there had never been a Chapter 13 case. If the creditors were vested with the property (acquired) by the debtor after the filing of the Chapter 13 petition, the creditors would receive a windfall because they would get something they were not entitled to under state law without pursuit of further state law proceedings. (citation omitted). The result of vesting the (acquired) property in the debtor serves to put the parties exactly in the position they would have been in had the debtor never filed Chapter 13. If there had been no Chapter 13 case, the (acquired) property would have vested in the debtor subject to whatever rights the debtor's creditors had to reach the (acquired) property under applicable non-bankruptcy law and procedure to satisfy their claims against the debtor.

*Slaughter, supra,* at 663–664.

Under this rationale, which the Court embraces, the source of Debtors' plan payments

to Trustee is irrelevant. Regardless of whether the plan payments were derived from (i) the sale of inventory acquired pre-petition, (ii) pre-petition accounts receivable, or (iii) post-petition revenue or wages, the result should be and will be the same—the property revests in Debtors upon the dismissal of their case.

■ As indicated above, the Bank argues that it is entitled to the funds as adequate protection to offset any impairment to the value of its collateral. However, a request for adequate protection must be made prospectively. *In re Best Products, Inc.*, 138 B.R. 155 (Bankr.S.D.N.Y.1992), *aff'd* 149 B.R. 346 (S.D.N.Y.1992). A bank cannot after the fact demand funds paid to the trustee as adequate protection. *In re Barrett*, 149 B.R. 494 (Bankr.N.D.Ohio 1993).

■ As for the Bank's assertion that it is somehow entitled to an administrative expense claim based upon some implied (but unproven) diminution in the value of its collateral, nothing in § 503(b) suggests that a mortgagee is entitled to an administrative expense claim for its costs in protecting and preserving its collateral. *Id.* at 499. Administrative expenses are normally expenses incurred at the instance of the trustee which are designed to benefit the estate generally, not simply one creditor or the debtor. *Id.*

■ As stated by Judge Ginsburg in *Slaughter* and quoted above, the goal of § 349 is to restore the parties, as nearly as possible, to their respective positions prior to the bankruptcy filing. In this case, the Bank still has the same lien rights against Debtors' inventory and accounts receivable. To the extent that the funds paid to the Trustee were derived from inventory sales or accounts receivable, the Bank would have the same lien rights it would have had in the funds if they never left the hands of the Debtors. In addition, Debtors are not and will not be receiving a discharge in bankruptcy so the Debtors remain personally liable to the Bank. However, the Bank is not entitled to take possession of said collateral or enforce their lien rights against Debtors personally without pursuing state law proceedings. It would be inequitable, then, and indeed a windfall to the Bank, if it were given possession of the collateral as a result of the filing and subsequent dismissal of Debtors' bankruptcy. By returning the property to the Debtors, the relative rights and positions of the parties are, as nearly as possible, restored to where they would have been if the Debtors had never filed bankruptcy.

For the reasons set forth above, Debtors are entitled to have the $2,245.25 being held by the Trustee returned to them upon the dismissal of their case.

### ORDER

For the reasons set forth in an Opinion this date,

IT IS THEREFORE ORDERED THAT John H. Germeraad, Chapter 13 Trustee, turn over the sum of $2,245.25 to Debtors Carl M. Walter and Lori Ann Walter.