**In re Darick Patrice WILLIAMS, Debtor.**

**Darick Patrice Williams, Appellant,**

**v.**

**IMC Mortgage Company, Appellee.**

**BAP No. 99–6058 EM.**

United States Bankruptcy Appellate Panel of the Eighth Circuit.

Submitted Nov. 30, 1999.

Decided Dec. 27, 1999.

Deborah Rae Sterling Scott, St. Louis, MO, for appellant.

Angela Redden–Jansen, St. Louis, MO, for appellee.

Before KRESSEL, DREHER, and SCOTT, Bankruptcy Judges.

PER CURIAM.

This case presents the question of whether the bankruptcy court may allow a creditor's claim for postpetition mortgage accruals as an administrative expense.

The debtor filed a chapter 13 bankruptcy case on October 15, 1998, proposing to pay his mortgage, interest, and the mortgage arrearages over the course of a sixty month plan. The postpetition monthly mortgage payments were to be paid through the plan. Other than filing its proof of claim, the mortgagee, IMC Mortgage Company ("IMC") took no action during the bankruptcy and did not request adequate protection payments at any time.[1] Upon the debtor's failure to cure the chapter 13 trustee's objections to confirmation, the case was dismissed. Inasmuch as the plan had not been confirmed on the date of dismissal, April 13, 1999, the trustee held $6,397 of the debtor's funds which had not been distributed to any creditors. The dismissal order directed the trustee to pay claims "as allowed under section 503(b) ... and then he is to return any remaining funds to the debtor."[2]

On June 7, 1999, IMC filed an application for payment of administrative expenses in the amount of $5,264, asserting such amount represented the plan payments collected by the trustee but not paid because the plan was never confirmed, and $625 for attorney's fees, for a total of $5,889. On July 27, 1999, after a brief hearing during which no evidence was offered, an order was entered granting the application. This appeal followed. The debtor claims that, consistent with the clear language of the Bankruptcy Code, he is entitled to the funds. The debtor is correct.

Section 1326 of the Bankruptcy Code governs distribution of funds held in the hands of the trustee when a case is dismissed:

A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan.... If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

11 U.S.C. § 1326(a)(2). Section 503(b) permits allowance of administrative expenses, including:

After notice and hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries,

---

1. IMC's assertion that the filing of a proof of claim constitutes a request for adequate protection is without merit. *See* Fed.R.Bankr.P. 4001; 11 U.S.C. §§ 361, 362, 363, 364.

2. On May 26, 1999, the debtor filed a second chapter 13 case and on June 10, 1999, dismissed it. The order of dismissal in the second case similarly provided for the trustee to return all funds to the debtor after deducting any trustee fees and any unpaid claims allowed as an administrative expense under 11 U.S.C. § 503(b).

or commissions for services rendered after the commencement of the case.... 11 U.S.C. § 503(b)(1)(A).[3] In contrast to proofs of claim filed under § 502, which are deemed allowed absent objection, an administrative expense claim is allowed only after determination by the court that the expense is allowable. *See Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1415 (5th Cir. 1992), *cert. dismissed,* 507 U.S. 1048, 113 S.Ct. 1892, 123 L.Ed.2d 646 (1993). Although § 503(b) lists particular expenses which may be accorded administrative expense status, the term "including" in the statute indicates that the list is nonexclusive. Thus, in addition to considering the enumerated grounds for administrative expense status, the bankruptcy court has the authority to determine that additional kinds of claims may be administrative expenses. *In re George Worthington Co.,* 921 F.2d 626, 633 (6th Cir.1990).

■ The law is well developed. In making a determination under § 503(b)(1)(A), whether a claim is an "actual, necessary 'cost and expense' of preserving the estate," courts generally consider whether (1) the expense arose from a transaction with the estate, and (2) whether it benefitted the estate in some demonstrable way. *See, e.g., Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir.1997); *LaElectronica, Inc. v. Capo–Roman (In re LaElectronica, Inc.)*, 995 F.2d 320, 322–23 (1st Cir.1993). Section 503(b)(1)(A) requires the creditor to demonstrate that the expenses provided a tangible benefit to the bankruptcy estate before they may be granted administrative expense status. *Reiter v. Fokkena (In re Wedemeier)*, 239 B.R. 794, 798 (8th Cir. BAP 1999).[4] Moreover, the main policy behind granting administrative expense priority only to "actual, necessary" costs and expenses is to provide an incentive for creditors to continue or commence doing business with an insolvent entity. *See Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir.1987); *In re Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984).

■ The record reveals that IMC failed to meet either these tests. First, the expense—the postpetition mortgage payment—although not due until after the filing of the petition, was an obligation incurred prior to the creation of the estate. It is not sufficient that the payment became due after the petition date if the transaction was entered into prepetition. *Sunarhauserman,* 126 F.3d at 819; *Fireman's Fund Ins. Co. v. Wheeling–Pittsburgh Steel Corp. (In re Wheeling–Pittsburgh Steel Corp.)*, 67 B.R. 620, 623–24 (W.D.Pa.1986). Since IMC was already committed to dealing with the debtor, no inducement to IMC was required. The liabilities between the parties were fixed prepetition. Second, there was no evidence, or reasonable articulation of a position, presented to the bankruptcy court that any benefit was accorded the estate or that the accrual of the postpetition mortgage payments was an "actual, necessary" cost of preserving the estate. The incongruous nature of IMC's argument is demonstrated by the fact that it did not expend any funds to preserve the estate. Section

---

**3.** No other provision of § 503 governing administrative expense claims applies.

**4.** If the claim were accorded administrative expense status, the court would then determine the amount allowable as an administrative expense. In rental situations, the measure is the reasonable rental value of the property occupied. *Wedemeier,* 239 B.R. at 799. This standard is inapplicable here, however, inasmuch as the debtor is the owner of the property. He had the right to occupy that property. Moreover, case authority regarding lease holder creditors is inapplicable to this kind of situation because different policies are implicated. The right to allowance of an administrative expense for executory contracts is afforded different treatment under the Code, and, in some circumstances, an administrative expense claim is specifically provided for by § 365 of the Code.

503(b)(1)(A) appears to contemplate that an administrative expense include some expenditure or outlay of "costs" by the creditor. The fact situation in this case, however, is not one of a provider expending sums, labor or services.

■ Courts commonly recognize that § 503(b) is not intended to provide an administrative expense award to a prepetition secured lender based on the debtor's postpetition possession and use of collateral. *In re Robinson,* 225 B.R. 228, 233 (Bankr.N.D.Okla.1998); *In re McLeod,* 205 B.R. 76, 79 (Bankr.E.D.Tex.1996); *In re Walter,* 199 B.R. 390, 393 (Bankr.C.D.Ill. 1996); *In re Barrett,* 149 B.R. 494, 499 (Bankr.N.D.Ohio 1993), *appeal dismissed,* 1993 WL 52846 (Bankr.N.D.Ohio 1993); *First State Bank v. Advisory Information and Management Sys., Inc. (In re Advisory Information and Management Sys., Inc.),* 50 B.R. 627, 629 (Bankr.M.D.Tenn. 1985). *Cf. In re Prime, Inc.,* 37 B.R. 897, 899 (Bankr.W.D.Mo.1984) (noting that where there is no demand for adequate protection, an administrative claim in the amount of the debt payments is inappropriate because it gives the creditors something they did not request and payment in lump sum would be discriminatory in relation to the treatment of other secured creditors).[5] Courts reach this conclusion, in part, because a prepetition secured creditor has not been induced to deal with the debtor postpetition; the possibility of having to deal with a debtor in bankruptcy being one of the many considerations a lender must evaluate at the time of the original loan transaction. *Advisory Information,* 50 B.R. at 629. Further, the prepetition secured creditor is not contributing a benefit to the estate because the debtor is merely continuing to use property that the debtor already owns. *In re Provincetown–Boston Airline, Inc.,* 66 B.R. 632, 634 (Bankr.M.D.Fla.1986); *Advisory Information,* 50 B.R. at 630. The lender is simply "allowing" the debtor to use collateral that the debtor has a statutory right to use. *See Provincetown–Boston Airline, Inc.,* 66 B.R. at 634; *Advisory Information,* 50 B.R. at 630. In short, a debtor's expense of maintaining a residence does not benefit the estate; it only benefits the debtor.

At the hearing before the bankruptcy court, IMC did not make any argument, nor did it submit any evidence in support of its position, that its claim met these criteria. Thus, IMC not only failed to establish that it has a kind of claim that should be allowable as an administrative expense, but also failed to establish as a factual matter that it's claim fell within any category of claims in the statute. *Cf. Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.),* 954 F.2d 1, 4–5 (1st Cir.1992) (provisions of § 503 must be strictly construed and burden is upon claimant seeking administrative priority status). There was no showing of a postpetition contract or of benefit to the estate.

Rather than attempting to meet these requirements with evidentiary proof, IMC asserts that its claim for postpetition mortgage payments is entitled to administrative expense status because its debt is secured, it did not receive payment during the pendency of bankruptcy case, and the plan provided that postpetition mortgage payments would be made through the plan, thus suggesting that the debtor paid the sums to the trustee with the intent that they be used to pay IMC. Even were IMC's assertions accepted as evidence, the claim is simply not the kind of claim which

---

**5.** In *Prime,* the case argued by IMC, the bankruptcy court believed that the assertion of the administrative claim was allowable, but that the amount must be based upon what the creditor contributed to the ongoing business of the debtor: the amount of depreciation suffered by the collateral from the passage of time. *Prime,* 37 B.R. at 899. In this instance, IMC does not assert that the collateral depreciated. Thus, even were the court to accept IMC's construction of § 503 as asserted only in statements in the brief, there is not only a lack evidence as to the appropriate amount, but, under this fact situation, the amount allowable would be zero in any event because there is no evidence of depreciation.

is allowable as an administrative expense. IMC, a prepetition creditor, did not get paid during the pendency of the bankruptcy case—the position of every creditor in every chapter 13 case that is dismissed preconfirmation.[6] Its position is no different from the creditor who is secured, for example, by an automobile. The creditors' rights and expectations are that, upon confirmation, the funds will be distributed to them according to the terms of the plan. Alternatively, if the case is dismissed, they may pursue the debtor for payment of the debts. There is no legal or factual basis argued or established for IMC to expect different treatment from that accorded every other secured creditor or, indeed, unsecured creditor. To afford a secured or unsecured claim administrative expense status solely on the basis that it did not receive any of the funds intended to be paid to creditors during the confirmation process would afford the right to administrative expense status to virtually every secured creditor. This result was neither intended by the Code nor is it reasonable on policy grounds.

■ Moreover, IMC had other remedies that were available to it if it thought its collateral inadequate. If IMC believed it was entitled to receive payment before a plan was confirmed, or otherwise was entitled to collect on the debt it was owed, IMC could have moved for relief from the automatic stay under § 362(d) to foreclose its mortgage,[7] or it could have requested adequate protection under § 363(e). *See also* 11 U.S.C. §§ 361, 364. The fact that IMC believed that the bankruptcy court would not entertain such a request is not grounds for allowance of an administrative claim. A prepetition secured creditor's remedy for use and depreciation of its collateral during the bankruptcy is through a request for adequate protection, not an administrative expense. *Province-town–Boston Airline,* 66 B.R. at 634; *Advisory Information,* 50 B.R. at 629–30; *In re Briggs Transp. Co.,* 47 B.R. 6, 7–8 (Bankr.D.Minn.1984). If a creditor fails to seek adequate protection payments, nothing in § 503 suggests that an administrative expense priority is intended as an alternative remedy to adequate protection. *Robinson,* 225 B.R. at 233–34; *Province-town–Boston Airline,* 66 B.R. at 634; *Advisory Information,* 50 B.R. at 629–30.

Section 349 of the Bankruptcy Code further buttresses the analysis that allowance as an administrative expense is inappropriate. Section 349 provides that dismissal of a case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C. § 349(b)(3). Since, in chapter 13 cases, postpetition earnings are also property of the estate, the funds held by the trustee revest in the debtor. Thus, § 349 seeks to undo the effect of the bankruptcy filing and to place all parties in interest in the same position they were in prior to the bankruptcy filing. If there had been no chapter 13 case, the property and wages would have been retained by the debtor subject to whatever rights the creditors had under state law to satisfy their claims. Thus, upon dismissal of the chapter 13 case, IMC had the same rights and state law remedies with regard to the property as existed prior to the filing. Since no discharge was granted, IMC may enforce these rights against the debtor personally and *in rem.* It would be inequitable, however, to permit IMC to enforce its rights by requiring turnover of the funds in the manner requested without requiring adherence to the state law proceedings and protections they would be

---

6. The only exception is an order allowing adequate protection payments pursuant to § 361 or an order granting the creditor relief from stay to pursue state law remedies pursuant to § 362. Since IMC took no action to obtain either of these remedies, they are inapplicable.

7. IMC's counsel conceded at oral argument on appeal that it had no basis for moving for relief from stay.

required to follow in the nonbankruptcy context. Under the Bankruptcy Code, the funds are required to be returned to the debtor, and the debtor may then pay those funds over to his mortgagee. Indeed, the debtor is aware that he is obligated to pay the mortgage or lose his house in a foreclosure action.

In truth, IMC's complaint is essentially with the wording of the Code, a matter subject to change only by Congress. Under the Bankruptcy Code, the debtor immediately begins making payments to the trustee who holds them until confirmation of the plan. As a general rule, only upon confirmation of the plan does the trustee distribute funds pursuant to the plan. As a result, creditors receive no payment on the debts owed to them until such time as the plan is confirmed. If there is litigation regarding the contents of the plan or other cause for delay, creditors may be harmed by delay in receiving payments. Section 1326, however, establishes a clear and explicit command to the trustee that, upon dismissal, if there is no confirmed plan, funds will be returned to the debtor less any unpaid claims allowed under § 503(b). Inasmuch as there was no showing, or indeed argument or inference, before the bankruptcy court or this court, that the claim was an actual, necessary cost or expense of preserving the estate after the commencement of the case, the bankruptcy court erred in allowing this application for administrative expenses.

Based upon the foregoing, the decision of the bankruptcy court granting the request for payment of administrative expense is reversed.