**In re TAMA BEEF PACKING
INC., Debtor.**

No. 01–03822.

United States Bankruptcy Court,
N.D. Iowa.

Aug. 20, 2002.

Peter C. Blain, Joshua A. Blakely, Milwaukee, WI, Eric W. Lam, Cedar Rapids, IA, representing General Electric Capital Corporation.

Kevin H. Collins, Cedar Rapids, IA, representing Trowelon, Inc.

Jeffrey W. Courter, Des Moines, IA, representing Agriprocessors, Inc.

Priscilla H. Douglas, Santa Ana, CA, representing Amplicon, Inc.

Lynn Wickham Hartman, Cedar Rapids, IA, representing Iowa Quality Beef Supply Network, L.L.C.

Iowa Department of Revenue, Des Moines, IA, representing Iowa Department of Revenue and Finance.

Ronald J. Pepples, Parkersburg, IA, representing T.E.C. Industrial, Inc.

Carroll Reasoner, Cedar Rapids, IA, representing City of Tama.

Jeffrey P. Taylor, Cedar Rapids, IA, representing Renee K. Hanrahan.

John M. Titler, Cedar Rapids, IA, representing Tama Beef Packing, Inc.

US Attorney, Cedar Rapids, IA, representing IRS/FSIS.

## ORDER RE APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

PAUL J. KILBURG, Chief Judge.

The pending Application for Payment of Administrative Expense Claim filed by AgriProcessors, Inc. was heard on July 9, 2002. Attorney Jeff Courter represented AgriProcessors. Renee Hanrahan appeared as Chapter 7 Trustee. Attorney Lynn Wickham Hartman appeared for objector Iowa Quality Beef Supply Network, L.L.C. After hearing arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B).

## STATEMENT OF THE CASE

Debtor Tama Beef Packing, Inc. filed a Chapter 11 petition on November 8, 2001 which was eventually converted to Chapter 7. The only asset of value to the bankruptcy estate was Debtor's lease of real property with the City of Tama. Early in the case, the City sought rejection of the lease. Instead, Trustee attempted to market the lease. AgriProcessors, Inc. was, initially, the only interested party. It made an offer to Trustee for assignment of Debtor's rights in the lease. The City urged the Court and Trustee to reject the offer. Subsequently, Iowa Quality Beef made a higher offer which was ultimately accepted by Trustee and approved by the Court.

AgriProcessors seeks allowance of an administrative claim of approximately $47,000 for expenses arising from its pursuit of the lease assignment. This amount includes legal fees and expenses of $36,700, environmental engineering fees and expenses of $7,100, accounting fees of $2,300 and travel costs of $800. AgriProcessors argues that these amounts are fair and reasonable and were necessary as part of its due diligence and lease negotiations. It asserts that but for its offer to Trustee, the lease would have been rejected and no assets would have remained in the bankruptcy estate. AgriProcessors argues that its involvement in the case ultimately generated $153,000 from Iowa Quality Beef, the successful lease assignee, for the benefit of the estate. Absent this payment by Iowa Quality Beef, it asserts, the estate would have been valueless.

Trustee supports AgriProcessors' request for an administrative priority claim. She states that if AgriProcessors had not made an offer for assignment of the lease, there would have been no other offers. AgriProcessors was the only potential buyer. Prior to its offer, Iowa Quality Beef and the City of Tama were engaged in

outside negotiations and refused to deal with Trustee.

Trustee states that the bankruptcy estate holds $153,025 in its bank account. Trustee fees and fees and expenses for Trustee's attorney will total approximately $40,000. Trustee makes a preliminary estimate that other priority claims, including wage claims and taxes, will total $60,000 to $65,000. Debtor's Schedule E, however, lists total priority claims of $180,298. Unsecured claims total approximately $15 million.

Iowa Quality Beef objects to AgriProcessors' request for an administrative claim. It states it objects on behalf of wage earners who will be its future employees. Iowa Quality Beef understood that its $153,000 payment to the bankruptcy estate for assignment of the lease would go to pay wage earner claims. It asserts that AgriProcessors was acting in its own self-interest in making a bid to purchase Debtor's lease with the City of Tama. Iowa Quality Beef argues expenses incurred relating to AgriProcessors' pursuit of the lease do not qualify for administrative expense status.

**ADMINISTRATIVE EXPENSE CLAIM**

■ Administrative expenses are priority claims, the allowance of which may diminish the recovery of creditors and other claimants. *In re Flight Transp. Corp. Sec. Litig.*, 874 F.2d 576, 581 (8th Cir.1989). For this reason, priority statutes such as § 503(b) are strictly and narrowly construed. *Id.*

■ Section 503(b)(1)(A) gives administrative priority to "the actual, necessary costs and expenses of preserving the estate." When making a determination under § 503(b)(1)(A), courts consider whether (1) the expense arose from a transaction with the estate, and (2) whether it benefitted the estate in some demonstrable way.

*In re Williams*, 246 B.R. 591, 594 (8th Cir. BAP 1999). The claimant has the burden to demonstrate, by a preponderance of the evidence, that the expenses provided a tangible benefit to the bankruptcy estate. *Id.* The main policy behind granting administrative expense priority only to "actual, necessary" costs and expenses is to provide an incentive for creditors to continue or commence doing business with an insolvent entity. *Id.*

■ The key issue is whether the transaction was beneficial to the estate, not whether the creditor should be compensated for a loss it incurred during the case. *In re Ramaker*, 117 B.R. 959, 962 (Bankr.N.D.Iowa 1990). Incidental benefit to the estate or extensive participation in the case, standing alone, is not a sufficient basis for administrative priority status. *In re Van Dyke*, 1994 WL 881855, at *4 (Bankr.N.D.Iowa June 10, 1994) (Hoyt, J.); *see also In re Midway Airlines, Inc.*, 221 B.R. 411, 447–48 (Bankr.N.D.Ill.1998). The reasoning under § 503(b)(1)(A) is that "parties subjected to loss and expense as a result of the administration of a bankruptcy estate are entitled to be made whole as a matter of fundamental fairness and should be allowed an administrative claim to implement that result." *In re Hildebrand*, 205 B.R. 278, 286 (Bankr.D.Colo. 1997) (relying on *In re G.I.C. Government Sec., Inc.*, 121 B.R. 647, 649 (Bankr. M.D.Fla.1990), analyzing *Reading Co. v. Brown*, 391 U.S. 471, 483, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968)). The conduct involved must be "actual, necessary" and in an effort to "preserve the estate." *Hildebrand*, 205 B.R. at 286.

In *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532 (3d Cir.1999), an unsuccessful bidder at the sale of a debtor's assets sought break-up fees and expenses. The court considered whether the claimant

was entitled to receive an administrative priority claim for such expenses under § 503(b)(1)(A). *Id.* The court noted the claimant must "carry the heavy burden of demonstrating that the costs and fees ... provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Id.* at 533. Benefit to the estate could be found if assurance of a break-up fee in the circumstances promoted more competitive bidding or induced a bidder to research the value of the debtor resulting in a dollar figure on which other bidders can rely. *Id.* at 537.

In *In re Communications Management & Info., Inc.,* 172 B.R. 136, 143 (Bankr. N.D.Ga.1994), the court considered whether efforts of employees of the purchaser of the debtor's assets and other expenses incurred in relation to the purchase were entitled to administrative priority under § 503(b)(1)(A). The court concluded "[a] purchaser of estate assets will not be compensated for its time and effort in accomplishing the purchase of the assets." *Id.* The court found certain related services of marketing, collecting accounts receivable and assisting in recovery of assets of the debtor were compensable. *Id.* at 144. Services performed to assist in the purchaser's intended acquisition of the debtor were not compensable by the estate. *Id.*

Likewise, in *In re Williams,* 165 B.R. 840, 841 (Bankr.M.D.Tenn.1993), the court concluded that services which indirectly, incidentally, or tangentially benefit the estate do not qualify for the administrative expense priority. Attorney services performed solely for the purpose of facilitating the client's purchase of the debtor's business were not "actual, necessary" costs and did not qualify for administrative expense priority. *Id.* at 842; *In re American 3001 Telecommunications, Inc.,* 79 B.R. 271, 273 (Bankr.N.D.Tex.1987) (find-

ing attorney fees of party which proposed unsuccessful plan of reorganization by which it would acquire assets of debtor were not entitled to payment from the estate as administrative expense claim). In *Wolf Creek Collieries Co. v. GEX Kentucky, Inc.,* 127 B.R. 374, 381 (N.D.Ohio 1991), the court found that one factor to consider in a § 503(b)(1)(A) analysis is whether the claimant was acting in its own self-interest, rather than the estate's, when it incurred expenses for which it claims administrative priority.

The facts and rationale of *In re Frog & Peach, Ltd.,* 38 B.R. 307, 309–10 (Bankr. N.D.Ga.1984), have a strong correlation with this case. In that case, the court discussed whether an unsuccessful bidder for the debtor's assets should be entitled to an administrative claim for attorney fees and expenses. The claimant argued that its initial offer attracted the interest of the successful purchaser and encouraged competitive bidding. *Id.* at 308. The court concluded that such expenses did not fall within any of the defined categories of § 503(b). *Id.* at 308. Refusing to grant an administrative priority to the claimant, the court expressed its reluctance to open a potential floodgate of claims of outsiders which are not specifically authorized under § 503(b). *Id.* at 310. Furthermore, the court observed that had the debtor not been involved in a bankruptcy proceeding, the claimant would have certainly absorbed the costs of attorney's fees and expenses arising from its unsuccessful bid. *Id.*

## CONCLUSIONS

 The Court concludes that AgriProcessor's claim for attorney fees and other expenses is not entitled to administrative expense priority. There is no dispute that the expense arose postpetition from a transaction with the estate. The attorney

fees and other expenses arose in connection with AgriProcessor's attempt to acquire the assignment of Debtor's lease with the City. This occurred after Debtor's case converted from Chapter 11 to Chapter 7.

However, the expenses incurred by AgriProcessors do not constitute actual, necessary costs and expenses of preserving the bankruptcy estate. AgriProcessors has the burden to prove its claim is entitled to administrative priority under § 503(b)(1)(A), which this Court must strictly and narrowly construe. AgriProcessors has not shown that it was subjected to loss as a result of the administration of the bankruptcy estate. Had there been no bankruptcy estate, AgriProcessors would certainly expect to absorb the costs and expenses arising from an unsuccessful bid for the assignment of a lease such as Debtor's.

The bankruptcy estate incidentally benefitted from AgriProcessors' pursuit of Debtor's lease with the City. The Court agrees it is probable that, without AgriProcessors' initial offer to Trustee, Iowa Quality Beef would not have negotiated with Trustee and the lease would have been considered worthless and abandoned from the bankruptcy estate. This incidental benefit to the estate, however, does not entitle AgriProcessors to an administrative priority claim.

The fees and expenses set out in AgriProcessors application were incurred for the benefit of AgriProcessors alone. These costs arose as a result of AgriProcessors' interest in purchasing Debtor's sole asset and its attorney's efforts on its own behalf. Section 503(b)(1)(A) does not authorize payment from the estate for such costs incurred by an interested party during the case in relation to the purchase of Debtor's lease interests. AgriProcessors did not incur the costs in order to preserve the bankruptcy estate. The costs arose from its attempt to obtain an asset from the bankruptcy estate.

The Court must strictly construe § 503(b)(1)(A). AgriProcessors' fees and expenses from its pursuit of an assignment of Debtor's lease with the City do not qualify for priority under that statute.

**WHEREFORE,** the Application for Payment of Administrative Expense Claim filed by AgriProcessors, Inc. is DENIED.