FILED

MAR 10 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

In re:                                    )      BAP No. NV-16-1242-LJuKu
                                          )
KITTUSAMY, LLP,                           )      Bk. No. 2:15-bk-13868-abl
                                          )
                   Debtor.                )
_____        )
                                          )
PARTAP INVESTMENTS, LLC,                  )
                                          )
                   Appellant,             )
                                          )      **MEMORANDUM**[*]
v.                                        )
                                          )
KITTUSAMY, LLP,                           )
                                          )
                   Appellee.              )
_____        )

Argued and Submitted on February 24, 2017
at Las Vegas, Nevada

Filed - March 10, 2017

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable August B. Landis, Bankruptcy Judge, Presiding
_____

Appearances:     Samuel A. Schwartz of The Schwartz Law Firm argued
                 for Appellant Partap Investments, LLC; Bart Kurt
                 Larsen of Kolesar & Leathan, Chtd. argued for
                 Appellee Kittusamy, LLP.
                 _____

Before: LAFFERTY, JURY, and KURTZ, Bankruptcy Judges.

_____

[*]     This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

# INTRODUCTION

Pre-petition, Kittusamy, LLP ("Kittusamy") defaulted on payments due under agreements to lease medical imaging equipment. After an order for relief was entered in Kittusamy's involuntary chapter 11[1] case, the lessor filed a proof of claim asserting a secured claim of approximately $3.3 million.[2] Thereafter, the lessor was granted relief from stay and foreclosed its security interest. The equipment was sold to Partap Investments, LLC ("Partap") at a private foreclosure sale; the bill of sale also transferred to Partap the lessor's rights under the proof of claim filed in Kittusamy's bankruptcy case and Kittusamy's rights under a sublease.

Thereafter, Partap filed an application for allowance of an administrative claim of $917,593.26 based on unpaid postpetition rent from the petition date through a date six days after Partap purchased the equipment. The bankruptcy court disallowed the administrative claim in its entirety, finding that the leases were not true leases but were disguised security agreements, so that the rights transferred to Partap could not have included an administrative claim for postpetition rent. Additionally, viewed through the alternative lens of a secured creditor's rights, the bankruptcy court found that Partap had not met its burden of proving a diminution in value of the collateral for any relevant period.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] Although characterized as leases, the relevant documents granted lessor a security interest in the equipment.

We AFFIRM.

**FACTS**

The facts are not in dispute. Kittusamy is a Nevada limited liability partnership. Prem K. Kittusamy, M.D., and Bhuvaneswari P. Kittusamy, M.D., are the principals of the LLP.

In 2008 and 2009, Kittusamy and its affiliate, DMP Equipment, LLC, entered into agreements to lease medical imaging equipment from Siemens Medical Solutions USA, Inc. ("Siemens Medical"). Kittusamy leased one piece of equipment through a Master Equipment Lease Agreement and Leasing Schedule that set forth the details of the financing; DMP leased four pieces of equipment, also via a Master Equipment Lease Agreement and a separate Leasing Schedule for each item. DMP then subleased that equipment to Kittusamy under an Equipment Sublease Agreement ("Sublease").

All three parties entered into a Consent to Sublease and Agreement under which Siemens Medical approved the sublease and Kittusamy agreed to be bound by the terms of the DMP Master Lease. All of the Leasing Schedules provided that Kittusamy had the option to purchase the equipment for a "Nominal Fixed Purchase Option Price of $1.00" at the end of the lease term. Thereafter, Siemens Medical assigned its interests in the Master Equipment Lease Agreements, Leasing Schedules, and Sublease and Consent (collectively, the "Lease Documents") to Siemens Financial Services, Inc. ("Siemens Financial"). At some point, Kittusamy defaulted on its obligations under the Lease Documents; according to its proof of claim, Siemens Financial accelerated the amounts due under the Lease Documents on November 4, 2014.

-3-

On July 2, 2015, an involuntary chapter 11 petition was filed against Kittusamy; Kittusamy consented to entry of an order for relief, which was entered August 10, 2015. Siemens Financial filed proof of claim no. 23-1 asserting a secured claim of $3,343,487.18 representing prepetition amounts due under the leases, including late charges, property taxes, discounted accelerated balance of future rentals, and attorneys' fees and costs through December 10, 2015. Siemens Financial then moved for relief from the automatic stay, which the bankruptcy court granted. Thereafter, Siemens Financial foreclosed on its security interest, selling the equipment to Partap for $924,641.70 plus $75,358.30 in sales tax through an "As Is," "Where Is" Bill of Sale and Non-Recourse Assignment dated March 2, 2016 ("Bill of Sale"). Siemens Financial also transferred to Partap "all of Siemens Financial's rights, title and interests in any claim Siemens Financial has asserted in the Kittusamy, LLP Bankruptcy Case No. 15-13868-ABL . . ." and all of Kittusamy's and DMP's "respective rights, titles and interests, in and to the equipment . . . and sublease[.]"

On March 3, 2016, Partap filed a Notice of Transfer of Siemens Financial's claim in Kittusamy's bankruptcy case. On March 9, 2016, Partap filed proof of claim no. 41-1 asserting an administrative claim of $917,593.26 pursuant to § 507(a)(2) for Kittusamy's postpetition use of the equipment. The amount of the claim was based on the monthly payments due under the DMP Master Lease and the Sublease only (not the Kittusamy Master Lease)

-4-

through March 9, 2016,[3] and included more than $300,000 in late fees.

Kittusamy filed an objection to Partap's unsecured and administrative claims; Partap filed an application for approval of its administrative claim, and an "opposition" to Kittusamy's objection to claims. The bankruptcy court heard argument and took the matters under submission. On July 19, 2016, the bankruptcy court made oral findings and conclusions on the record and entered written orders (1) sustaining Kittusamy's objections to Partap's administrative and unsecured claims and (2) denying Partap's motion to allow its administrative claim. Partap timely appealed. Partap appeals only the bankruptcy court's disallowance of its administrative claim.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in disallowing Partap's administrative claim?

## STANDARDS OF REVIEW

We review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. See Allen v. U.S. Bank, NA (In re Allen), 472 B.R. 559, 564 (9th Cir. BAP 2012).

---

[3] At oral argument, Partap's counsel asserted that it was owed an administrative claim for amounts due through early April when Kittusamy surrendered the equipment. However, both the proof of claim and the application to approve it requested amounts due only through March 9, 2016.

-5-

A bankruptcy court's order allowing or disallowing a proof of claim, including an administrative claim, is reviewed for abuse of discretion. Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 707 (9th Cir. 1988); Bitters v. Networks Elec. Corp. (In re Networks Elec. Corp.), 195 B.R. 92, 96 (9th Cir. BAP 1996). A bankruptcy court abused its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

Questions of contract interpretation are subject to de novo review unless extrinsic evidence was introduced on issues such as intent. Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.), 311 B.R. 530, 534 (9th Cir. BAP 2004), aff'd, 182 F. App'x 708 (9th Cir. 2006).

**DISCUSSION**

**A.    The bankruptcy court did not abuse its discretion in disallowing Partap's administrative claim.**

Under § 503(b), the bankruptcy court, after notice and a hearing, shall allow an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate[.]" The party seeking administrative priority bears the burden of proof. Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.), 66 F.3d 1091, 1094 (9th Cir. 1995). To keep administrative costs to the estate at a minimum, the term "actual, necessary costs and expenses of preserving the estate" is narrowly construed. Id. An administrative claimant must demonstrate that its claim (a) arose from a transaction with the

debtor in possession as opposed to the preceding entity, and (b) directly and substantially benefitted the estate. Id. at 1094.

Here, the bankruptcy court made the following findings relevant to Partap's administrative claim: (1) the leases were security agreements under N.J. Stat. Ann. § 12A:1-203(b)[4]; (2) the Bill of Sale did not transfer to Partap a right to assert an administrative claim for the period prior to Partap's purchase of the equipment; (3) any administrative claim would be limited to the actual value of Kittusamy's use of the equipment, not the monthly payments under the Lease Documents, and Partap had not provided sufficient evidence of the diminution in value of the equipment during the pendency of the case. The court also noted that Partap might be entitled to an administrative claim based on the diminution in value of the equipment from the time Partap purchased the equipment in March 2016, but that Partap had not provided any evidence of what that diminution might be.

Partap has not assigned error to the bankruptcy court's finding that the leases were disguised security agreements, but disputes that the Bill of Sale did not transfer to Partap a right to assert an administrative claim and that any administrative claim would be limited to the actual value of Kittusamy's use of the equipment. We conclude that the bankruptcy court did not err in these findings.

---

[4] The Lease Documents provide that they are to be construed in accordance with the laws of the state of New Jersey. The parties do not dispute that New Jersey law applies to the analysis of whether the leases are security agreements. As it happens, New Jersey and Nevada law are consistent in this regard.

**1.    The bankruptcy court did not err in finding that Partap had no right to assert an administrative claim for postpetition rents based on the Bill of Sale.**

As noted above, the Bill of Sale transferred to Partap "all of Siemens Financial's rights, title and interests in any claim Siemens Financial has asserted in the Kittusamy, LLP Bankruptcy Case No. 15-13868-ABL[.]" The bankruptcy court found that Siemens Financial had neither filed an administrative claim nor transferred any such claim to Partap under the Bill of Sale and thus Partap was not entitled to assert an administrative claim as successor-in-interest to Siemens Financial. Additionally, the bankruptcy court found that, as a secured creditor, Siemens Financial would not have been entitled to assert an administrative claim for the lease payments, but would have been entitled only to adequate protection for the postpetition diminution in the value of the equipment. Importantly, Partap has not assigned error to this latter aspect of the bankruptcy court's ruling.

Partap argues that the bankruptcy court did not consider page 2 of the Bill of Sale, which provides for the transfer to Partap of "all of Kittusamy's and DMP's . . . respective rights, titles and interests in, and to the equipment . . . and sublease . . . described in Schedule 1 hereto . . . , subject to the terms and conditions hereof." Schedule 1 lists the five pieces of equipment along with "[r]ights, title and interest in and to that certain Equipment Sublease Agreement entered into between Kittusamy, LLC and DMP Equipment, LLC regarding the above equipment." Partap contends that the transfer of the interests

in the Sublease entitled Partap to assert an administrative claim against Kittusamy for its failure to make payments under the Sublease. Partap points out that contracts should be construed so as to avoid rendering portions of them superfluous, <u>Penske Logistics, Inc. v. KLLM, Inc.</u>, 285 F. Supp. 2d 468, 474 (D.N.J. 2003), and argues that the bankruptcy court's interpretation of the Bill of Sale renders Schedule 1 meaningless.

Additionally, Partap notes that the Bill of Sale expressly excludes certain claims that were not transferred to Partap and argues that if Siemens Financial had intended to exclude the transfer of its right to an administrative claim it would have done so; Partap further contends that the fact that Siemens Financial never filed an administrative claim or opposed Partap's application for allowance of its administrative claim is evidence that the Bill of Sale included the transfer of the right to assert an administrative claim.

Finally, Partap argues that in fact Siemens Financial did assert a right to file an administrative claim in its motion for relief from stay, which stated:

> [T]o the extent that the adequate protection to which Siemens Financial is entitled proves to be inadequate, and the value of its interest in the Siemens Equipment continues to decline, Siemens Financial asserts that any claim arising therefrom is entitled to an administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code.

Partap argues that because the Bill of Sale referred to "asserted" rather than "filed" claims, Siemens Financial's reservation of rights in its motion for relief from stay gave Partap the right to file an administrative claim.

We find these arguments unconvincing. With respect to any

-9-

right of a lessor to assert an administrative claim for unpaid rent, Siemens Financial could not transfer to Partap a right it did not have. As noted, Partap does not assign error to the bankruptcy court's finding that Siemens Financial was a secured creditor, not a lessor, and the transfer of rights under the Sublease did not change the character of the leases as security agreements. Where the property in question is not owned by the lessor but is instead owned by the lessee under a disguised security agreement, the lessor is not entitled to an administrative priority claim under § 503(b)(1)(A) for unpaid post-petition lease payments. See Williams v. IMC Mortg. Co. (In re Williams), 246 B.R. 591, 595 (8th Cir. BAP 1999) (noting that § 503(b) is not intended to provide an administrative expense award to a prepetition secured lender based on the debtor's postpetition possession and use of collateral, and citing cases); See also In Re ES2 Sports & Leisure, LLC, 519 B.R. 476, 480 (Bankr. M.D.N.C. 2014). Further, the payment obligations under the Lease Documents were incurred prepetition, not postpetition. This circumstance alone would have barred Siemens Financial from asserting an administrative claim. See In re Williams, 246 B.R. at 594 (postpetition mortgage payments, although not due until after the filing of the petition, were an obligation incurred prior to the creation of the estate, thus the requirement that the administrative claim arise from a postpetition transaction was not met). This conclusion is bolstered by the fact that Siemens Financial apparently accelerated the amounts due under the Lease Documents in November 2014, eight months prepetition.

The bankruptcy court did not err in finding that the Bill of Sale did not grant Partap a right to file an administrative claim for unpaid rent for the period prior to its purchase of the equipment.

**2. The bankruptcy court did not err in finding that Partap had not presented sufficient evidence of diminution in value.**

With respect to the transfer of any rights as a secured creditor, i.e., a right to assert a claim for postpetition diminution in value of the equipment, Partap asserted in the bankruptcy court that the equipment had diminished in value by $525,358.30 before March 3, 2016, the date Partap purchased the equipment. Partap contended that the beginning value of the equipment was $1.45 million, based on Prem Kittusamy's testimony at a confirmation hearing on March 18, 2016 regarding negotiations with Siemens Financial, in which Dr. Kittusamy stated that the parties had agreed at some point during the bankruptcy that the equipment was worth between $1.4 and $1.5 million. Partap also noted that Kittusamy's Proposed Disclosure Statement to Accompany Debtor's First Amended Chapter 11 Plan of Reorganization filed October 30, 2015 valued the equipment at $1,397,518. From $1.45 million, Partap subtracted the amount it paid for the equipment, $924,641.70, yielding $525,358.30.

The bankruptcy court found this evidence insufficient to establish the diminution in value, but did not elaborate on its specific reasoning. However, we find no error in the bankruptcy court's conclusion. Even assuming (without deciding) that

-11-

Dr. Kittusamy's testimony and/or the disclosure statement were competent evidence of the equipment value as of the petition date,[5] it is far from clear whether the price paid by Partap to purchase the equipment reflects its fair market value on that date.

First, the price obtained at a forced sale does not necessarily reflect fair market value. See BFP v. Resolution Trust Co., 511 U.S. 531, 537-38 (1994) (noting that market value is the antithesis of forced-sale value, and that "fair market value" presumes market conditions that do not obtain in the context of a forced sale).

Second, as pointed out by Partap, it purchased not only the equipment but also Siemens Financial's right to collect on its claim filed in the bankruptcy case and Kittusamy's and DMP's rights under the Sublease. Therefore, the purchase price does not appear to have been based solely on the fair market value of the equipment. In short, Partap failed to provide sufficient evidence from which the bankruptcy court could discern the fair market value of the equipment and therefore its diminution in value.

**3. The bankruptcy court did not err in disallowing Partap's administrative claim for the period after March 3, 2016.**

The bankruptcy court disallowed Partap's administrative

---

[5] Kittusamy notes that Dr. Kittusamy's testimony was in the context of describing failed efforts to reach a compromise with Siemens Financial to retain the equipment, and that no final agreement on value was ever reached.

claim in its entirety, thus implicitly denying a claim for the six-day period after Partap had purchased the equipment. Partap argues that the bankruptcy court erred in this aspect of its ruling because, as the owner of the equipment, Partap was entitled to an administrative claim for Kittusamy's use of the equipment after March 3, 2016.

Partap's argument might make sense had it filed an application for allowance of such a claim. Instead, according to Partap's application for allowance of its administrative claim, claim no. 41-1 was based on unpaid postpetition rent from the petition date through March 9, 2016. Assuming without deciding that Partap was entitled to an administrative claim for unpaid rent accruing after it purchased the equipment on March 3, 2016, Partap did not differentiate in its application between the pre- and post-purchase periods or provide any explicit evidence of the amount due for the period after it purchased the equipment. Keeping in mind that it was Partap's burden to prove its entitlement to an administrative claim, there was a failure of proof with respect to the amount of any such claim. Thus, the bankruptcy court did not err in disallowing the claim in its entirety.[6]

## CONCLUSION

For the reasons explained above, the bankruptcy court did not abuse its discretion in disallowing Partap's administrative

---

[6] This is not to suggest that Partap could not seek relief for Kittusamy's continued retention and use of the equipment after the purchase date. However, any such relief would be premised upon Partap's status as the owner of the equipment.

-13-

claim.  Accordingly, we AFFIRM.