# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 14-6016

_____

In re: Sylva Corporation, Inc.

*Debtor*

------------------------------

GE Capital Commercial, Inc.

*Movant - Appellant*

v.

Sylva Corporation, Inc.

*Debtor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 28, 2104
Filed: November 26, 2014

_____

Before FEDERMAN, Chief Judge, SALADINO and SHODEEN, Bankruptcy
Judges.

_____

SALADINO, Bankruptcy Judge.

The Appellant, GE Capital Commercial, Inc. ("GE Capital"), appeals the decision of the bankruptcy court denying its motion for allowance of an administrative expense claim for unpaid lease obligations against the Debtor-Appellee, Sylva Corporation, Inc. ("Sylva"). For the reasons set forth below, we reverse and remand for further proceedings.

## *FACTUAL BACKGROUND*

The parties are in agreement on the pertinent facts applicable to this appeal.[1] In November 2007, Sylva entered into a "Lift Lease Agreement" with a predecessor to GE Capital for the lease of certain equipment[2] used in Sylva's business operation. The lease was for an initial term of 60 months, expiring on November 30, 2012, and provided for Sylva to make monthly lease payments on the terms set forth in the lease agreement.

Paragraph 11 of the lease agreement gave Sylva the option to purchase the equipment during the lease term or upon expiration of the initial term by complying with the specific terms contained in that paragraph. Sylva did not do so. Paragraph 23 of the lease agreement gave Sylva the right to terminate the lease agreement upon expiration of the initial term by giving notice and returning the equipment. Again, Sylva did not do so. Therefore, pursuant to Paragraph 23, the lease automatically renewed on a month-to-month basis following the initial term until such time as either party provided the other with at least 90 days' written notice of its intent to terminate the lease agreement. Upon expiration of the initial term on November 30, 2012, Sylva

---

[1]Prior to the evidentiary hearing in bankruptcy court on April 29, 2014, the parties filed a stipulation of facts. The facts in this section are taken from that stipulation and from undisputed portions of the record.

[2]The equipment consisted of a Rotochopper Model EC266 Wood Grinder Processor and a Superior Model 20X70 Stacking Conveyor.

had not provided any such notice to GE Capital and retained possession of the equipment. Therefore, the lease continued on a month-to-month basis.

On April 3, 2013, Sylva filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the District of Minnesota. Sylva is continuing in possession of its property and operating and managing its business as a debtor-in-possession.

GE Capital filed its proof of claim on May 9, 2013, specifically identifying the basis of its claim as a "true lease" and further asserting:

> This is a contingent claim arising from an equipment lease except for those amounts designated as "Pre-Petition Amounts Due" below. In the event this lease is rejected all amounts asserted hereunder become a non-contingent liability of the debtor. The claim reflected herein is consistent with Claimant's position that the contracts underlying the claim are true leases. . . .

Sylva has not objected to GE Capital's proof of claim nor has it commenced an adversary proceeding to determine the nature and extent of GE Capital's interest in the equipment.

On October 17, 2013, GE Capital filed a motion for an order compelling Sylva to assume or reject the lease agreement and for relief from the automatic stay or, in the alternative, granting adequate protection. Sylva filed its response to GE Capital's motion asserting that the lease expired in December 2012 and that there is no lease in force for Sylva to assume or reject. Sylva asserted that the issue should be whether GE Capital is adequately protected, not whether the lease should be assumed or rejected. The bankruptcy court held an initial hearing on November 13, 2013, and set the matter for evidentiary hearing to take place on February 8, 2014.

In the meantime, on December 2, 2013, Sylva filed an amended motion to sell property of the estate free and clear of liens. The property subject to that motion included, but was not limited to, the equipment that is the subject of the lease agreement with GE Capital. In its objection to Sylva's sale motion, GE Capital asserted that Sylva is obligated to continue making monthly payments and had failed to perform its obligations under the terms of the lease agreement as required by 11 U.S.C. § 365.[3] Others parties in interest also objected to the sale motion, and it was later withdrawn by Sylva.

Prior to the scheduled hearing on GE Capital's motion to compel assumption or rejection of its lease, the parties entered into a settlement which resulted in the filing of a stipulation with the bankruptcy court on February 21, 2014. The stipulation specifically states that it is filed in resolution of GE Capital's motion to compel the assumption or rejection of its lease and that it is entered into by and between Sylva and GE Capital. The stipulation contains a section entitled "RECITALS," which contains many unqualified statements which are directly contrary to some of the positions taken by Sylva in its filings related to this appeal. In particular, the recitals identify the lease and its terms, state that "GECCI has a valid lessor's interest in [the equipment]"; that monthly rental payments for February, March, and April of 2013 were due and unpaid, together with sales/use tax and late fees for a total pre-petition past due amount as of the bankruptcy filing date of $12,766.79.

The stipulation has a second section entitled "STIPULATION" containing provisions whereby Sylva agreed to cease using the equipment and to make the equipment available for reclamation by GE Capital. The stipulation also contained a provision stating that "[u]pon approval of this Stipulation by the Court, to the extent

---

[3]In this particular filing, and others in the bankruptcy court, GE Capital erroneously refers to 11 U.S.C. § 365(B)(5) – a section which does not exist. This error was corrected in GE Capital's filings on appeal, and we presume that the references in the bankruptcy court filings were meant to be references to § 365(d)(5).

the Lease Agreement remains in force, Debtor is authorized to reject the Lease Agreement." Finally, there is a reservation of rights provision whereby the parties agree that the stipulation would be without prejudice to GE Capital's right to enforce additional default-related rights and remedies, including, but not limited to, filing of a motion for allowance of administrative expense. It was also without prejudice to Sylva's rights, including the right to contest any claims made by GE Capital.

On March 4, 2014, GE Capital filed the underlying motion for administrative expense, Sylva objected, and the matter was set for evidentiary hearing on April 29, 2014. Sylva again argued in its objection that the agreement is not a true lease, but instead is a financing agreement. The objection also indicates that Sylva did actually use the equipment for a total of 130 hours in calendar year 2013.

Prior to the evidentiary hearing, the parties again filed a stipulation of facts. The stipulation included the background facts set forth in the prior stipulation regarding GE Capital's motion to assume or reject, described the events leading up to Sylva's confirmed plan, and specifically provided that "[t]he Lease Agreement between Debtor and GECCI was rejected by the Debtor on April 1, 2014." This stipulation did not include a reservation of rights.

*BANKRUPTCY COURT DECISION*

An evidentiary hearing was held on GE Capital's motion for administrative expense and the resistance of Sylva on April 29, 2014, and the bankruptcy court subsequently issued its oral ruling denying the motion for administrative expenses. In its ruling, the bankruptcy court expressly stated that it would only analyze the motion under § 503(b)(1)(A) and would "not make any determinations about an administrative expense claim under 365(d)(5) . . . ." As a result, the bankruptcy court determined that GE Capital had the burden to prove by a preponderance of the evidence that the estate received a tangible benefit for the use of the equipment.

Ultimately, the court determined that GE Capital had failed to meet its burden of proof and denied its motion for an administrative expense claim.

## *STANDARD OF REVIEW*

Here, the bankruptcy court's factual findings are not at issue. Rather, the issue is whether the bankruptcy court properly applied and interpreted the appropriate statute. Such a determination is reviewed de novo. *Wegner v. Grunewaldt*, 821 F.3d 1317, 1320 (8th Cir. 1987); *Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel Co.)*, 267 B.R. 602, 609 (B.A.P. 8th Cir. 2001).

## *DISCUSSION*

The question presented in this appeal is whether the bankruptcy court erred in analyzing GE Capital's motion for determination of administrative expense using only the legal standards and evidentiary burdens under 11 U.S.C. § 503(b)(1)(A) instead of those under 11 U.S.C. § 365(d)(5). In its motion to the bankruptcy court, GE Capital requested allowance as an administrative expense the lease payments due under the lease agreement for the period from the date of bankruptcy filing until the date the lease agreement was rejected, plus attorneys' fees and expenses related to reclaiming the equipment. To complicate matters, GE Capital asserted in its motion that it was entitled to the administrative expense claim under both § 365(d) and § 503(b).[4] The legal standards and burdens under those two sections are quite different, and the bankruptcy court expressly elected to analyze the motion under § 503(b) rather than § 365(d)(5). Thus, we must determine whether the bankruptcy court erred in doing so.

---

[4]For good measure, GE Capital also threw in § 105(a), the provisions of which do not come into play in this appeal.

GE Capital argues that the bankruptcy court should have applied the legal standards and burdens under § 365(d)(5), which provides as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, *unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof*.

(Emphasis added.)

Next, GE Capital argues that due to a relative lack of controlling law interpreting § 365(d)(5), we should follow the same analysis the Eighth Circuit Court of Appeals has established for interpreting § 365(d)(3). With a couple of significant exceptions, § 365(d)(5) is very similar to § 365(d)(3), which provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

The operative language of both sections is precisely the same: "The trustee shall timely perform all the obligations of the debtor . . . under an [any] unexpired lease . . . until such lease is assumed or rejected, notwithstanding section 503(b)(1)

of this title." Both sections require the trustee (or debtor-in-possession)[5] to timely perform all post-petition obligations of the debtor under unexpired leases until such time as the lease is assumed or rejected. There are, however, some differences. Section 365(d)(3) deals with unexpired leases of nonresidential real property, whereas § 365(d)(5) deals with unexpired leases of personal property. The obligation to perform in § 365(d)(5) begins "from or after 60 days after" bankruptcy filing, whereas the obligation in § 365(d)(3) begins "from and after" the order for relief. Finally, § 365(d)(5) contains an important exception to the performance obligation since it concludes with the clause "unless the court, after notice and a hearing and based on the equities of the case, orders otherwise . . . ."

Relying on an Eighth Circuit case interpreting § 365(d)(3), GE Capital asserts, both in its motion to the bankruptcy court and in this appeal, that it is "automatically" entitled to an administrative expense claim for the post-petition rent that became due. In *Burival v. Roehrich (In re Burival)*, 613 F.3d 810 (8th Cir. 2010), the Eighth Circuit Court of Appeals had the opportunity to interpret a lessor's right to an administrative expense claim under 11 U.S.C. § 365(d)(3). In that case, the appellants argued that the landlord was not entitled to an administrative expense priority for post-petition, pre-rejection lease payments under the Bankruptcy Code. The Eighth Circuit disagreed, stating:

> To the contrary, § 365(d)(3) claims have priority status. Section 365(d)(3) expressly preempts subsection 503(b)(1), but not the introductory authorization of "administrative expenses" in § 503(b). The administrative expenses listed in the subsections of § 503(b) – preceded by "including" – are not exclusive. *See* 11 U.S.C. § 102(3) (in the bankruptcy code, "including" is not limiting). Because §

---

[5]11 U.S.C. § 1107(a) states that with certain exceptions not applicable here, a debtor-in-possession shall have all of the rights, powers, and duties of a Chapter 11 trustee.

365(d)(3) claims have a status at least equal to a claim under subsection 503(b)(1), the BAP correctly approved Pritchett's claim as an administrative expense. *In re Pacific-Atlantic Trading Co.*, 27 F.3d at 405.

613 F.3d at 812-13.

While we agree with GE Capital that the operative language of § 365(d)(3) and (d)(5) are similar enough that cases under § 365(d)(3), such as *Burival*, are relevant to provide guidance to a court interpreting a situation under § 365(d)(5), they are not necessarily "automatic" or dispositive. Instead, when applied to a situation under § 365(d)(5), the Eighth Circuit's analysis in *Burival* is a starting point that is subject to the exceptions and qualifications found in § 365(d)(5) and not in § 365(d)(3) – namely the 60-day exclusion and the exception based on the equities of the case. *See CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway)*, 406 F.3d 229, 234 (4th Cir. 2005) (stating that in construing § 365(d)(10) [now § 365(d)(5)], courts often look to decisions construing § 365(d)(3)).

Here, the bankruptcy court expressly declined to consider the matter under § 365(d)(5).[6] However, we note that GE Capital expressly argued in its motion that it was entitled to an administrative expense claim under § 365(d)(5) for the post-petition rent payments, which is a position it has consistently taken throughout the bankruptcy case. For example, its proof of claim clearly asserted its rights under its lease as a "true lease." On October 17, 2013, GE Capital filed a motion to compel,

---

[6]Specifically, the bankruptcy court stated "I do not make any determinations about an administrative expense claim under 365(d)(5) because [an attorney for GE Capital] argued that the conflicting case law under 365(d)(5) is irrelevant here because GECC couldn't satisfy the requirements of 503(b)(1)(A)." We are not entirely clear as to why the bankruptcy court took that position since GE Capital repeatedly asserted its claim under § 365 throughout the bankruptcy case, and we found no such argument by GE Capital on the record to the effect that § 365(d)(5) is irrelevant.

among other things, assumption or rejection of its lease and demanded performance of Sylva's obligation to pay the post-petition rent payments under § 365. On December 6, 2013, GE Capital objected to Sylva's motion to sell, again asserting its right to be paid its lease payments. In February 2014, Sylva and GE Capital entered into a stipulation resolving GE Capital's motion to assume or reject, in which GE Capital expressly reserved its right to seek an administrative expense claim. Finally, GE Capital did in fact file a motion seeking an administrative expense claim which resulted in this appeal. Thus, the written record supports GE Capital's request that its motion be considered under§ 365.[7]

We note, as did the bankruptcy court, that the burden of proof under § 503(b)(1) is on the claimant seeking an administrative expense claim. *Williams v. IMC Mortg. Co. (In re Williams)*, 246 B.R. 591, 594 (B.A.P. 8th Cir. 1999). However, under § 365(d)(5), the entitlement to the administrative expense claim is automatic unless the debtor or objecting party can show that the court should order otherwise based on the equities of the case. *CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway)*, 406 F.3d 229, 240-241 (4th Cir. 2005) ("This interpretation is consistent with the overall purpose of § 365(d)(10) [now § 365(d)(5)], which is to 'shift to the debtor the burden of bringing a motion while allowing the debtor sufficient breathing room after the bankruptcy petition to make an informed decision.'" (citing H.R. Rep. No. 103-835, at 50 (1994), *reprinted in* 1994

---

[7]We also recognize that the bankruptcy court gave some deference to the argument by Sylva to the effect that an attorney for GE Capital had stated at an earlier hearing that the lease had expired and the only thing executory was the purchase option. That statement was made at a hearing in November 2013 on GE Capital's motion to compel assumption or rejection of its lease, and in the context of a discussion about an anticipated sale of the equipment by Sylva. The parties did not stipulate or consent to anything at that hearing, other than setting the motion for an evidentiary hearing. In any event, the statement is clearly inaccurate and is directly contrary to the written position taken by GE Capital throughout the case. Accordingly, we give it no weight in this appeal.

U.S.C.C.A.N. 3340, 3359)); *see also Burival v. Roehrich (In re Burival)*, 613 F.3d 810, 812 (8th Cir. 2010) (holding that under § 365(d)(3), the debtor's rent obligations "must be performed when they arise after filing and before rejection" regardless of whether the lease preserved or benefitted the estate).

By declining to consider GE Capital's motion under 11 U.S.C.§ 365(d)(5), the bankruptcy court shifted the burden of proof from the objecting party to the claimant, which is erroneous as a matter of law.

Finally, there was some discussion in the bankruptcy court's oral ruling and in the briefs on appeal as to whether the lease agreement GE Capital had with Sylva was a "true lease" or a disguised security agreement. The bankruptcy court did not rule on this issue. We note that prior to the bankruptcy court hearing on the motion for administrative expense, GE Capital and Sylva filed a stipulation with the bankruptcy court in which they agreed that the parties entered into the lease agreement, that it continued on a month-to-month basis following the initial term, that Sylva failed to make any payments under the lease since the petition filing date, and that "the Lease Agreement between Debtor and GECCI was rejected by the Debtor on April 1, 2014." Notwithstanding those stipulations, and its earlier stipulations in connection with the motion to compel assumption or rejection, Sylva continues to argue in opposition to the motion for administrative expense that the lease is not a "true lease," but is really a finance agreement.

Of course, the foregoing discussion regarding § 365(d)(3) and (d)(5) would be applicable only if the "lease agreement" were a true equipment lease and not a secured financing arrangement. *See, e.g.*, *Alegre v. Michael H. Clement Corp. (In re Michael H. Clement Corp.)*, 446 B.R. 394, 402 (N.D. Cal. 2011) (citing *City of San Francisco Market Corp. v. Walsh (In re Moreggia & Sons, Inc.)*, 852 F.2d 1179, 1182 (9th Cir. 1988) and *Gibson v. Harris Pine Mills (In re Harris Pine Mills)*, 862 F.2d 217, 220 n.5 (9th Cir. 1988)); *Westship, Inc. v. Trident Shipworks, Inc.*, 247 B.R. 856

(M.D. Fla 2000); *In re Extraction Tech. of VA, L.L.C.*, 296 B.R. 393, 399 (Bankr. E.D. Va. 2001). Thus, we believe that is the threshold issue that must be decided before any analysis under § 365 or § 503. *See, e.g.*, *Gen. Elec. Capital Corp. v. Collins & Aikman Corp. (In re Collins & Aikman Corp.)*, 351 B.R. 459 (E.D. Mich. 2006) (dismissing interlocutory appeal because bankruptcy court had not conclusively determined whether agreements at issue were true leases or executory contracts); *Hotel Syracuse, Inc. v. City of Syracuse Indus. Dev. Agency (In re Hotel Syracuse, Inc.)*, 155 B.R. 824 (Bankr. N.D.N.Y. 1993) (in adversary proceeding to determine whether debtor may assume executory contract, the court must first determine whether the agreement is a true lease or some other type of financial arrangement). The bankruptcy court did not rule on that issue and we will not either.

Upon remand, the bankruptcy court should first determine whether Sylva's assertion that the lease agreement is not a "true lease" is still a disputed issue following the stipulations entered into by the parties and the confirmed plan of reorganization of Sylva. If it is, the court should establish a procedure to adjudicate that issue. If the bankruptcy court ultimately determines that the lease agreement is a "true lease," it should then analyze the issue under 11 U.S.C. § 365(d)(5) for the period from or after 60 days after the filing date to the date of rejection. Because § 365(d)(5) does not mandate performance prior to the 60th day post-petition, the request for an administrative expense claim for the lease payments due during that period is properly analyzed under § 503(b)(1)(A). *See In re Double G Trucking of the Arlatex, Inc.*, 442 B.R. 684, 689 (Bankr. W.D. Ark. 2010). Accordingly, upon remand the bankruptcy court should make specific factual and legal findings with respect to the use of the equipment and the benefit to the estate during that period of time.

## *CONCLUSION*

For the reasons set forth above, the decision of the bankruptcy court is reversed and remanded for further proceedings consistent with this opinion.

_____